THOMPSON v. LOCKE.

1. Contract: RULE OF CONSTRUCTION: SITUATION AND ACTS OF PARTIES: RULE STATED AND APPLIED. It is always competent, in construing a written contract, to consider the situation of the parties, the subject-matter of the contract, and the acts of the parties under the contract, as showing what the parties understood to be their obligations; and this is no infringement of the rule that the contract cannot be explained or varied by parol. And so, where plaintiff was employed by defendant to drive piles on a railroad between certain points, and plaintiff agreed "to push said driving so as to keep out of the way of the track-layers;" and "to drive on said line until all the piles are driven to" the terminus of the road, and the question arose whether plaintiff had, by virtue of said language in the contract, the *exclusive* right to drive piles on said line, and it was shown that, when he began work, another, to his knowledge, and without objection on his part, began like work at another point on the line, and continued such work over a large portion of the line, and that plaintiff, without objection, accepted help from such other person, on the part where he (plaintiff) was engaged, *held* that the contract, construed in the light of these circumstances as indicating the intention of the parties, did not give plaintiff the exclusive right to drive the piles on said line.

*Appeal from Benton Circuit Court.*

FRIDAY, DECEMBER 12.

THIS is an action at law, by which the plaintiff seeks to recover damages of the defendant for the breach of a written

contract for the driving of piling on the line of the Burlington, Cedar Rapids & Northern Railroad from Clarion to Estherville. There was a trial by jury, and a verdict and judgment for the plaintiff for $920. Defendant appeals.

*Gilchrist & Haines*, for appellant.

*Nichols & Burnham*, for appellee.

ROTHROCK, CH. J.—The following is a copy of the contract between the parties: "Articles of agreement made and entered into this seventh day of June, 1881, between James B. Locke, of the city of Vinton, Benton county, state of Iowa, of the first part, and J. C. Thompson, of the city of Vinton, Benton county, state of Iowa, of the second part, as follows: The party of the second part agrees to commence driving piles, as soon as notified that the piles are on the ground ready, at or near Clarion, on the line of the Burlington, Cedar Rapids & Northern Railroad; and further agrees to push said driving so as to keep out of the way of the track-layers, so that the track-layers will not have to wait for the piles to be driven; and further agrees to drive on said line until all the piles are driven to Estherville, that being the terminus of the road this coming fall; said driving of piles to be done subject to the approval and acceptance of the engineer in charge of said road. The party of the first part agrees to furnish transportation on the Burlington, Cedar Rapids & Northern road, free of charge, to the second party; also to furnish piling on the ground at or near where the piling are to be driven. The first party agrees to keep piling on hand, so that the second party will not have to wait for piling. The party of the first part agrees to pay the second party, upon the engineer's monthly estimate, the sum of seventeen and one-half cents per lineal foot of piles driven; also to pay over to said second party, upon completion of contract, all moneys due him for said piling."

It is conceded that the plaintiff, as soon as notified, pro-

ceeded to the point designated, and entered upon the performance of the contract. He charges that the defendant failed and refused to furnish piling on the ground as he agreed to do, and refused to allow plaintiff to drive the piling when the same were on the ground, at or near the place where the same were to be driven. The defendant, in addition to a general denial, avers that he fully performed the contract on his part, except a delay on one occasion in furnishing piling as required by the contract, but that he settled with and fully paid the plaintiff for such delay; that about November 24, 1881, the contract was abrogated by mutual consent of the parties; and that in March, 1882, a full and complete settlement of all matters arising thereunder was had between the parties, and plaintiff was then paid in full all that was found to be due to him. The cause was tried upon the theory that by the contract the defendant was bound to allow the plaintiff to drive all the piling between the points therein named, and the court instructed the jury as follows: "*First.* Under the written contract between plaintiff and defendant, and upon which plaintiff brings this suit, you are instructed that plaintiff covenanted and agreed to drive all the piling on the line of the railroad between the points on said line as designated in said contract; and the defendant covenanted and agreed that he would give the plaintiff the right to drive all of said piling, and pay him therefor seventeen and one-half cents per lineal foot of the piling so driven." The defendant contended that this was an erroneous construction of the contract, and he excepted to the above instruction, and insisted that the defendant was bound to give the plaintiff employment on the work until finished, but that there was no obligation upon his part to give the plaintiff the driving of all the piling.

The contract does not expressly provide that the plaintiff was to have the exclusive right to drive all the piling. He "agrees to drive on said line until all the piles are driven to Estherville." It appears to us that this required the plaintiff to remain in the employment of the defendant until all the

work should be finished, and to drive piling wherever required so to do by the defendant at any point on the line. The rights of the parties were about the same as if the defendant had hired the plaintiff, with his pile drivers, to drive piles at so much per day, and that plaintiff should continue at the work until it should be completed from Clarion to Estherville. The only provision of the contract which leaves this construction doubtful is that part of it which requires the plaintiff to push the work so as to keep out of the way of the track layers. Without a knowledge of the work to be done, and of the acts of the parties under the contract, there would be strong grounds for holding that, under this provision, the parties contemplated that the plaintiff was to drive all the piling for the whole distance. But it is always competent, in construing a contract, to show the situation of the parties, the subject-matter of the contract, and the acts of the parties under the contract, as showing what the parties understood to be their obligations; and this is no infringement of the rule that the contract cannot be explained or varied by parol. " When the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it." Code, § 3652. Now, whether the plaintiff understood that he had the right, under the contract, to drive all the piling between the points named; or only to work on the job until it was completed, it is very plain that he had good reason to suppose that the defendant did not understand that plaintiff was to do all the work.

The plaintiff commenced his work at Clarion, and at about the same time one Furguson commenced driving piling at Livermore, a point on the line northwest of Clarion. Furguson had a contract with the defendant. The plaintiff knew before he commenced work that some one was to drive piling on the same line. Furguson continued at work from Livermore northwest on the line all of the summer and fall, and completed the work up to near Emmetsburg by the time plaintiff

reached Livermore. The plaintiff was then ordered by the defendant to move up to Emmetsburg, which he did, and, after doing some work just south of that place, he moved up north of the town, and was driving piling in a lake, when, as he alleges, the defendant refused to allow him to continue on the work. Now the material part of these acts of the parties is that the plaintiff admits that he knew in July that Furguson was at work at or near Livermore, and he knew that Furguson was working towards Emmetsburg. He testified in part as follows: "I did not request Furguson to come and help me on Des Moines river bridge. He did come and drive some on that bridge with me. I did not request him to come, nor did I object to his coming. I might have told Furguson I was afraid the track-layers would catch me. Furguson came down to see me about coming down to drive piling. He said he did not want any body on his work, and he did not want to go on anybody else's work without consent. I said I supposed there was as much work as we all could do; that it did not make much difference where he worked."

*During all this time the plaintiff made no objection or complaint to anyone about Furguson working on the line.* This shows quite clearly what the parties understood by the requirement that the plaintiff should rush the work and keep out of the way of the track-layers. He was required to do this upon the work assigned to him from time to time. This being our view of the proper construction of this contract, it follows that the cause must be reversed, because it was tried upon an entirely different theory.

In view of a new trial, we deem it proper to say that the plaintiff has no ground of complaint, and no proper claim for damages, for not being allowed to do the work which was done by Furguson between Livermore and Emmetsburg. If he was wrongfully turned away, and refused work from Emmetsburg to Estherville, and until the job was completed, he is entitled to whatever damages, if any, he sustained from that wrongful act and breach of the contract.    REVERSED.