OSKALOOSA COLLEGE v. THE WESTERN UNION FUEL COMPANY *et al.*, Appellants.

"Mining Grounds" Construed. The prohibiting of the mining of certain "grounds," in a lease, deals not with the surface only, but everything underneath it. (1)

"Ground East and South," construed. Reserving the ground east and south of a building from mining, precludes mining to the southeast of it within the square lying between the southeast corners of the land lying east and south. (2)

Trespass. A tenant may be liable as for a willful trespass on premises reserved from his lease, and Code, 3332, 3335, defining damages for waste by tenants on leased lands, has no application. (5, 6)

Instructions Construed Together. Where the court expressly construes a lease, the fact that it tells the jury, by way of preliminary statement, what to do if it find a trespass on land, "prohibited by the lease," does not sustain the claim that the construction of the lease was submitted to the jury. (3)

**Taking Papers to Jury Room.** Defendants asked that a plat and field notes attached and referred to in a deposition, be sent to the jury, to which plaintiff objected unless the whole deposition be sent, which proposition defendant declined, whereupon the court sent the plat only. The notes and the plat contradicted each other. The plat dealt with a material issue and was not introduced independently, but as part of the deposition. *Held,* prejudicial error. (4)

**Objection Made too Late.** An objection that nothing can be recovered under the petition can not be made for the first time in this court. Code, 2650. (8)

ON REHEARING.

**Conflict Between Bill of Exceptions and Notes.** Where the bill of exceptions gives in a clear and narrative form what transpired at the trial, it will control an incomplete and obscure report of the shorthand reporter, where the two are inconsistent.

*Appeal from Mahaska District Court.*—HON. A. R. DEWEY, Judge.

JANUARY 26, 1893.

ACTION against defendants for damages arising from willful trespass, in mining coal on plaintiff's land. Trial to jury. Verdict and judgment for plaintiff. Defendants appeal.—*Reversed.*

*J. F. and W. R. Lacey, L. C. Blanchard* and *Seevers & Seevers* for appellants.

*Bolton & McCoy* and *H. H. Sheriff* for appellee.

KINNE, J.—I. Defendants are charged with knowingly entering upon the premises of plaintiff, and willfully committing trespass thereon by mining and carrying away coal, and thereby causing the surface of plaintiff's ground to cave in and become otherwise injured. It is also charged that defendant Thomas Seevers had been appointed receiver for the defendant, the Standard Coal Company, and judgment is prayed against all the defendants. Defendants denied the allegations of plaintiff's petition, and affirmatively

averred that the plaintiff had leased and granted to said company the right to enter said premises, and mine and take therefrom coal, for which a certain royalty was to be paid; pleaded that they had fully complied with the lease, and paid the royalty for coal taken; also pleaded settlement had with plaintiff after mining had ceased, wherein plaintiff, with full knowledge of the matters complained of, accepted the royalty on the coal mine, and is now estopped; avers that McNeill acted for the company, and had no personal interest in, or benefit from, said mining, and that some of the defendants took coal beyond or outside the lines described in said lease. A copy of the lease is set out. Plaintiff, in a reply, denied all allegations in defendant's answer.

II. The first error presented arises out of the construction placed upon the lease by the district court. The following provisions of the lease are material to a proper understanding of the question presented: "The Standard Coal Company shall have the right to enter upon the surface of said land (should it be necessary to do so in order to drain or make air courses for the mine, so that the coal can be mined) for the purpose of so draining or ventilating said mine, but shall pay for any growing crop destroyed by such entry. The ground east and south of the building is reserved from terms of this lease; also fifty feet west of college building alongside of said building; i. e., no coal to be taken within fifty feet of building, and the pillars along this last reserve to be left for twenty-five feet further, leaving the pillars standing for seventy-five feet from building. No shaft or machine for raising coal is to be placed on the ground, and no ventilating or water shafts within three hundred feet of said building." In the fourth instruction the court told the jury that the lease gave the defendants no right to enter upon or take coal from the land of plaintiff as follows: "From

any portion included in the east one hundred feet of plaintiff's land; or from any portion lying south of a line running east from the north side of the plaintiff's college building; or from any portion lying east of a line running south from the west side of plaintiff's college building; or within fifty feet of any point from plaintiff's college building.'' Defendants contend that the construction placed upon the lease by the court was wrong, in this; that the lease did not prohibit mining coal in the excepted territory, but only referred to the ''ground,'' meaning the surface of the earth. They further claim that the exempted ground, as defined by the court, embraces a larger area than do the provisions of exception in the lease. We are clear that the lease was intended to, and did, embrace, not only the surface, but likewise everything thereunder. Any other construction of the contract would permit defendants to mine coal immediately adjacent to, and even under, plaintiff's building, and it is certain, from the contract itself, as well as from the construction placed upon it by the acts of the parties, that the present claim was an afterthought. A more difficult question is to ascertain what land was excepted from the lease. It reads: ''The ground east and south of the building is reserved from the terms of this lease; also fifty feet west of college building alongside of said building,'' etc. Should the words ''ground east and south of the building,'' be held to mean land directly east and directly south of the building, such a construction would leave a piece of land in the southeast corner of the leased grounds which would be neither south nor east of the building, but southeast of it. We think this construction is entirely too technical. To so construe the lease would permit defendants to mine up to the southeast corner of plaintiff's building. We think the construction of the district court was right; that the contract fairly considered, in view of the rules of law applicable thereto,

warrants the instruction given.   While the lease must be construed from the language used therein, still it is proper to take into consideration the situation of the parties, the subject-matter of the contract  and the acts of the parties thereunder, as showing how they understood the obligations created by the contract  (*McDaniels v. Whitney*, 38 Iowa, 60;  *Thompson v. Loche*, 65 Iowa, 432, 21 N. W. Rep. 762;), or, as is often said, the writing may be read in the light of surrounding circumstances, in order to more fully understand the intent and meaning of the parties  (*Jacobs v. Jacobs*, 42 Iowa, 605).   Applying the above rules to this case, it seems to us that the lease was properly construed, and that the acts, circumstances, and situation of the parties tend strongly to show that the construction given to the lease was in accordance with the intent of the parties when they entered into it.   Surely, when the construction given clearly effectuates the intent of the parties thereto, it should be carried out, when, as in this case, no violence will thereby be done to the language used in the lease.

III.   It is proper to observe that there are over seventy assignments of error in this record.   Our duties render it impossible for us to enter upon a detailed discussion of all the questions thus presented.   While we have carefully examined them all, yet we can not give any of them extended consideration, save those which impress us as being of controlling importance in the disposition of the case.   It is said that the court failed to construe the lease; that the question of its proper construction was in fact submitted to the jury.   This contention is based upon extracts of portions of sentences taken from various instructions, and generally from preliminary or introductory clauses, thus: "If you find from the evidence that defendants trespassed on the property of plaintiff, and within that portion prohibited by the lease;" and other similar statements.   We must,

however, under the law and in fairness to the trial court, construe all of the instructions together; and, when this is done, it is apparent that the question of the construction of the contract was not submitted to the jury. In the fourth instruction the court explicitly construed the lease, and told the jury what portion of plaintiff's property was exempted from it. In the fifth and other instructions reference is made to such exempt portion of plaintiff's property. It is clear that the jury could not have failed to understand that the court had defined for their guidance the extent of defendants' rights under the lease.

IV. The deposition of one Dunn, a surveyor, was read in evidence, on the part of plaintiff. Attached thereto, and by the interrogatories and answers in said deposition expressly made a part of it, were certain field notes, which accompanied a plat, also a part of the deposition. The plat and field notes, being a part of the deposition, could not be sent to the jury except by the consent of both parties. They were not introduced in evidence independent of the deposition, but as forming a part of it. Code, section 2797. The record shows that, when the jury were about to retire, defendants asked that the Dunn plat and field notes be given to the jury. Plaintiff objected, unless Dunn's entire deposition was given to them. Defendants would not consent to the deposition's going to the jury. The court then had the plats detached from the deposition, and sent them to the jury, but refused to send the field notes. To this action the defendants objected. We think this action was clearly error. Being a part of the deposition, neither the plats nor field notes could be given to the jury unless by consent of all the parties. As this consent was not had, the court had no right to send the plats alone. Nor are defendants precluded from objecting to the court's action in sending the plats

alone, because they asked to have both plats. and field notes sent. The main question in the case was as to whether or not defendants had mined coal which they had no right to mine, under the terms of their lease, and hence it was of the utmost importance to locate exactly the rooms which had been mined out. That was the point which Dunn's testimony was largely directed to. That was what the plaintiff sought to establish by his survey plat and notes. Defendants contended that the plat and notes were incorrect. The plat was made from the notes, and defendants introduced evidence which tended to show that Dunn's plat and notes were incorrect, and that the plat did not agree with the notes. The plat tended to show that defendants had mined coal at a point where they claimed they had not done so. Defendants contended that their evidence showed that the plat and field notes did not agree. We think the claim is well founded, and, under such circumstances, it was certainly prejudicial to them to give the jury the plat, and withhold from them the notes from which the plat was made. As we have said, neither the plat nor notes should have been given the jury except by consent of both parties. Nor were defendants bound to submit to plaintiff's proposition to send the whole deposition, or, failing so to do, have the plat sent alone. They were justified in standing upon their legal rights. Plaintiff claims that its case is fully established, independent of the Dunn survey. We think, however, under the circumstances disclosed in the record, we are not justified in assuming that the error was without prejudice to defendants.

V. Counsel claim that the rule of damages in cases of willful trespass ought not to be applied to the coal company, as they insist that the company was not guilty of such trespass. In view of a retrial of the case, it would not be proper for us to comment on the weight or sufficiency of the evidence touching this matter.

We are content with the rule for measuring the damages stated by the trial court. We may properly say that the willful entry, if any, on plaintiff's lands, was not made under or by virtue of the lease. It follows that the situation of the parties with reference to such entry is the same as though no lease had been entered into. In other words, if defendants were willful trespassers on plaintiff's property, the fact that they had a lease of certain other property of plaintiff could have no effect in determining the extent or measure of their liability to plaintiff for the trespass committed.

VI. Claim is made that our statute in relation to willful trespass applies to this case and fixes the damages. Code, section 3332, 3335. These sections apply to tenants where they commit waste on property they have leased, and to certain other parties, but have no application to the case at bar. Appellants were not tenants as to the property on which it is claimed the trespass was committed, nor do they come within the other provisions of the statute.

VII. It is said that plaintiff is estopped because it settled with defendants after knowing that they had taken the coal outside of the ground leased. The claim does not merit extended consideration. The necessary elements of an estoppel are lacking; nor was there any settlement established. Hence there was no error in refusing to submit the question to the jury.

VIII. It is contended that, under the claim made in the petition, there can be no recovery at all. It is too late now to urge this objection. Code, section 2650. For the error heretofore pointed out, the judgment is REVERSED.

TUESDAY, FEBRUARY 6, 1894.

ON REHEARING.—For former report, see 54 N. W. Rep. 152.—*Reversed*.

ROTHROCK, J.—A petition for rehearing was filed in this case at the proper time, and an oral argument was made in support of the petition. The rehearing was granted, and the case has again been presented for our consideration. It is contended by counsel for appellee that the ground upon which the judgment was reversed was founded upon a mistake as to the record made in the court below when the Dunn plat was sent to the jury. This contention must be settled by the record made by the court below. The appellants' abstract sets out what purported to be the record made by a bill of exceptions, signed by the judge, and filed within the proper time. Appellee filed an additional abstract, which contained no denial of appellants' abstract. It is entitled an "Amendment to Abstract." It consists of sixty-eight printed pages, nearly all of which are additions to the evidence as shown by appellants' abstract. Toward the close of the evidence the additional abstract contains the following: "After argument by counsel, the question as to what exhibits should go to the jury came up, and the following entries of objection were made: Plaintiff objects to the plat attached to the Dunn deposition being severed from the deposition and sent to the jury, unless the whole deposition goes to the jury, as said plat is a part of the deposition, was attached to the deposition, came with the deposition, and the deposition refers to it, and makes it a part of the deposition. The plaintiff does not object to sending out the whole deposition, if counsel insists that it is proper to do it, but do object to sending out a part of it without sending out the explanation to it along with it. The objection is over-

ruled, the court finding that the plat submitted is a large plat, two and a half or three feet square; and is ordered to be detached, and is permitted to go to the jury, the same being Exhibits A and C of Dunn's deposition. Plaintiff excepts. Defendants ask that the field notes (Exhibit B) of the Dunn deposition, which refers to and defines Exhibits A and C be sent in. Plaintiff objects to sending the field notes to the jury unless the entire deposition is permitted to go. The field notes are not permitted to go to the jury. Defendants except. * * *'' This is a copy of the transcript or extension of the shorthand reporter's notes. As the record was presented to us, it was to be considered in addition to appellants' abstract. It is contended that the transcript of the reporter's notes must control. These notes of what transpired at the trial table in reference to what exhibits the jury should take are imperfect. They so show on their face. They appear to be in part the contention of counsel and the result of the court's ruling. They are not clear, but are obscure and imperfect. It appears that the motion for a new trial was overruled on the twenty-third day of March, 1891, and on the same day a bill of exceptions was filed, which, in a clear, distinct, narrative form, gave just what transpired. This bill was signed by the judge. And this court, in determining the case, adopted that as the true record. No claim was made in the appellee's abstract that the bill of exceptions was not correctly set out in appellants' abstract, and no claim is made now that it was not settled and signed by the presiding judge. We think it should be regarded as the true record, and that the incomplete notes of the shorthand reporter must, so far as they are inconsistent therewith, be held to be superseded or controlled by the bill of exceptions. We discover no reason for reaching a different result in the case, and the judgment will stand REVERSED.