KELLY & MAHON, Appellants, v. CELESTINE FEJERVARY, as Executrix of N. FEJERVARY, Deceased.

**Building Contract:** LIQUIDATED DAMAGES AND PENALTY: *Burden of proof.* Where a building contract, providing that in case of delay the contractor shall pay to the owner ten dollars per day for every day after that named for the completion of the work "as liquidated damages," contained no provision from which it could be determined whether the parties intended such sum to be liquidated damages or a penalty, the usual technical meaning of such term will be applied to it, in the absence of a contrary showing; the burden being on the contractor, in an action to recover the amount retained by the owner under such clause, to show that the same was a penalty.

EVIDENCE: *Construction of Contract.* Where a building contract provided that in case of delay the contractor should pay a certain amount for each day's delay as liquidated damages, but contained nothing from which it could be determined as to whether the sum to be retained was intended by the parties

as liquidated damages or as a penalty, evidence of conversations had at the time and just previous to the execution of a contract between the parties and their agents was not inadmissible as tending to contradict the written instrument, for, such evidence did not tend to contradict the instrument, but merely to explain what was intended by the expression "liquidated damages."

IS JURY QUESTION. Where, in an action to recover damages retained for delay in completing a building under a clause of the contract providing for liquidated damages, the evidence puts in issue the intention of the parties in using such clause, the question of the parties' intention is for the jury, and not for the determination of the court.

CONSTRUCTION ON APPEAL. Where a building was erected under a trust agreement, and the record on appeal, in an action to recover money retained as liquidated damages for delay, contained no showing as to the terms of the trust, except a statement by one witness that the building was erected as "an old men's home," the supreme court cannot determine the bearing which the trust and its provisions had on the issue whether the amount retained was intended by the parties as liquidated damages or a penalty.

**Pleading:** STRICKEN OFF. In an action to recover money retained for delay in completing a building contract, a reply, denying a conversation with defendant's intestate tending to show an intention to treat a provision in the written contract relating to damages for such delay as a penalty and not liquidated damages, was properly stricken from the files, as pleading evidence.

EFFECT ON EVIDENCE. Where, in an action to recover money retained as damages for delay in completing a building contract, a reply, denying that plaintiff had any conversation with defendant's intestate relating to whether or not such damages were intended as a penalty, had been stricken from the files as pleading evidence, such reply was no ground for excluding evidence of such conversations at the trial, because a pleading stricken before trial cannot control the taking of testimony.

*Appeal from Scott District Court.—*HON. A. J. HOUSE, Judge.

TUESDAY, OCTOBER 2, 1900.

THE plaintiffs entered into a contract April 15, 1892, with N. Ferjervary, by the terms of which they agreed to construct a certain building before October 15th of that year. They failed to complete it until some time in February, 1893, when the owner withheld from the contract price the sum of six hundred and sixty dollars as liquidated damages, for which recovery is sought in this action.   Verdict and judgment for the defendant, and the plaintiffs appeal.—*Reversed.*

*Cook & Dodge* for appellee.

*E. M. Sharon* for appellants.

LADD, J.—That the building was not completed by the time stipulated, and no extension granted in the manner required, was fully established by the evidence, and the jury may well have fixed the period of delinquency at sixty-six days.   The sixth paragraph of the contract provided that "the contractors shall and will proceed with the said work, and every part and detail thereof, in a prompt and diligent manner, and shall and will wholly finish the said work, according to the said drawings and specifications and this contract, on or before the 15th day of October, in the year one thousand eight hundred and ninety-two (provided that possession of the premises be given the contractors, and line and levels of the building furnished him, on or before the 25th day of April, in the year one thousand eight hundred and ninety-two), and in default thereof the contractors shall pay to the owner ten ($10) dollars for every day thereafter that the said work shall remain unfinished, as and for liquidated damages."   So that, if the stipulation for ten dollars per day be regarded as liquidated damages, the owner had the right to retain the six hundred and sixty dollars from the contract price.   But the appellant insists that this should be construed as a penalty, and actual damages only allowed.   It is often a matter of great perplexity to determine

whether a condition ought to be construed as ascertaining damages or merely as a penalty. Ordinarily, agreements are made to be performed, and the parties pay little heed to the contingency of a failure. For this reason, if the face of the instrument leaves it doubtful whether the parties intended the sum specified as liquidated damages or a penalty, the courts incline to treat it as a penalty to cover the actual damages only. Indeed, the fundamental principle underlying our system of jurisprudence is that of compensation, and the ultimate object is always, if possible, to put the injured party in as favorable a position as though the contract had been kept. "So long as the parties themselves keep this principle in view, they will be allowed to agree upon such a sum as will probably be a fair equivalent of a breach of contract. But when they go beyond this, and undertake to stipulate, not for compensation, but for a sum out of all proportion to the measure of liability which the law regards as compensatory, then the law will not allow the agreement to stand. In all agreements, therefore, fixing upon a sum in advance as the measure or limit of liability, the final question is whether the subject of the contract is such that it violates this fundamental rule of compensation. If it does so, the sum fixed is necessarily a penalty. If it does not do so, the question arises as in any other contract made; and here, as in all other cases, their intention, as ascertained from the language employed, is a guide." 1 Sedgwick, Damages, section 406. Thus, if damages larger than the law permits are stipulated, as more than the legal rate of interest for the nonpayment of money, or a sum certain is specified as ascertained damages for the breach of any one of several stipulations when the losses resulting from such breaches must necessarily differ in amount, or an excessive sum is named in a case where the real damages are certain or readily reduced to a certainty by proof, the sum designated, under any of these conditions, is to be construed a penalty. But when damages are to result from the breach

of a single stipulation, and may not be readily ascertained, then the amount agreed upon by the parties, if not disproportionate to the presumable loss, is recoverable as liquidated damages. *Wallis Iron Works v. Monmouth Park Ass'n* (N. J. Err. & App.) 26 Atl. Rep. 140, 19 L. R. A. 456 (39 Am. St. Rep. 626); *Wilhelm v. Eaves,* 21 Or. 194 (27 Pac. Rep. 1053, 14 L. R. A. 297); *Tennessee Manufacturing Co. v. James,* 91 Tenn. Sup. 154 (18 S. W. Rep. 262, 15 L. R. A. 211); *Hennessy v. Metzger,* 152 Ill. 505 (38 N. E. Rep. 1058, 43 Am. St. Rep. 267); *Hall v. Crowley,* 81 Am. Dec. 745; *Condon v. Kemper,* 47 Kan. Sup. 126 (27 Pac. Rep. 829, 13 L. R. A. 671).

Courts are not even agreed that the intention of the parties is of controlling importance. Christiancy, J., in *Jaquith v. Hudson,* 5 Mich. 123, declared: "The attempt to place this question upon the intention of the parties, and to make this the governing consideration, necessarily implies that, if the intention to make the sum stipulated damages should clearly appear, the court would enforce the contract according to that intention. To test this, let it be asked whether in such a case, if it were admitted that the parties actually intended the sum to be considered as stipulated damages, and not as a penalty, a court of law would enforce it for the amount stipulated. Clearly, it could not, without going back to the technical and long-exploded doctrine, which gave the whole penalty of the bond, without reference to the damages actually sustained. Courts would thus be simply changing the names of things, and enforcing under the name of stipulated damages what in its own nature is but a penalty. The real question in this class of cases will be found to be, not what the parties intended, but whether the sum is in fact in the nature of a penalty; and this is to be determined by the magnitude of the sum in connection with the subject-matter, and not at all by the words or the understanding of the parties. The intention of the parties cannot alter it. While the courts of law gave the penalty of

the bond, the parties intended the payment of the penalty
as much as they now intend the payment of stipulated dam-
ages.    It must, therefore, we think, be very obvious that
the actual intention of the parties of this class of cases, and
relating to this point, is wholly immaterial; and, though the
courts have very generally professed to base their decisions
upon the intention of the parties, that intention is not and
cannot be made the real basis of these decisions. ·In en-
·deavoring to reconcile their decisions with the actual inten-
tion of the parties, the courts have sometimes been compelled
·to use language wholly at war with any idea of interpreta-
tion, and to say 'that the parties must be considered as not
meaning exactly what they say.'" It would be difficult,
·indeed, to make a satisfactory response to this criticism, but
it may be said that the difference lies largely in the use of
words, and that whether or not the understanding of the
parties be held to control the same result is uniformly at-
tained. In *Sanford v. Bank,* 94 Iowa, 683, Deemer, J.,
stated the general rule, laid down in former decisions of
this court: "In construing such contracts, the court will
endeavor to ascertain the intention of the parties, and will give
the forfeiture clause such effect as they intended it should
have.    The words used, whether 'forfeiture,' 'liquidated
damages,' or 'penal sum' are not alone conclusive.   Nor, in-
deed, is the language of the contract generally.   The court
will look to the nature of the contract, the situation of the
parties, and to all the surrounding facts and circumstances
which throw light upon the intent of the parties, for
·the purpose of determining what meaning they placed
upon the words used." *De Graff, Vrieling & Co. v.
Wickham,* 89 Iowa, 720; *Foley v. McKeegan,* 4 Iowa, 1.
Thus, the circumstances mentioned by Justice Christiancy
arc taken into consideration in this state as pointing out the
intention of the parties rather than as indicating none
existed.

Though the use of a particular word will not be regarded as determinative, it may be remarked that, while the phrase "liquidated damages" is frequently declared to signify no more than a penalty, a sum expressly designated a penalty has rarely been construed to mean liquidated damages. Nothing in the contract before us indicates which was intended, save the words employed. The use of the proposed building is not disclosed therein. The seventh paragraph, in permitting the architect to extend the time on certain contingencies, if applied for in writing, and that if granted "the contractors shall be released from the payment of the stipulated damages for the additional time so certified," is no more definite than the sixth paragraph quoted. The twelfth paragraph relates solely to damages occasioned to the owner in furnishing unskilled labor or unsuitable material, or in finishing the building owing to the failure of the plaintiff on due notice, and has no relation to the delay in completing within the allotted time. It is peculiarly a case, then, for resort to extraneous evidence for aid in ascertaining the intention of the parties in the use of the term "liquidated damages." In the absence of any showing to the contrary, the usual technical meaning will be accorded this phrase, and the burden cast upon the plaintiff to show something else was really intended. *De Graff, Vrieling & Co. v. Wickham,* 89 Iowa, 726.

II. Undoubtedly proof of the use to which the building was to be put would have had an important bearing in ascertaining the intention of the parties. If solely for a charitable purpose, then it is quite likely not to have been suited to earning a profit, nor would it ordinarily be possible to estimate, with any degree of accuracy, the loss to that use. This, however, must depend somewhat on the character of the erection which was shown and the nature of the trust. One witness refers to the building as "the old men's home," and its transfer and that of a fund to trustees is mentioned, but beyond this the record

is silent. We may hope, but cannot assume, that its object is philanthropic, and it a monument to the benevolent spirit of its founder. But this has not been established by the evidence, and we cannot say, until advised of the nature of the trust, what bearing its conditions may have in fixing upon the understanding of the parties in making the stipulation with respect to damages.

III. Such clauses are treated in the books as somewhat in the nature of ambiguous expressions, and all evidence tending to disclose the true meaning of the parties received. For this purpose, the conversation relating thereto, had at the time or just previous to the execution of the contract between Kelly, acting for the plaintiff, and Fejervary or the architect, if then acting as his agent, as the evidence tended to show, should not have been excluded. The competency of the witness was not questioned. The object was not to attack the written instrument, but to explain what was intended by the use of the particular expression. True, in an amendment to a reply, stricken on motion, plaintiff averred Fejervary and plaintiff had no conversation. But that was no part of the pleadings at the time of the trial, and furnished no ground for the exclusion of the proffered testimony. And it may here be said that, as this amendment pleaded evidence, it was properly stricken.

IV. In view of another trial, it may be well also to add that, if the evidence adduced puts in issue the intention of the parties in using the clause of the contract relatto damages, it will be for the jury, rather than the court, to determine.——REVERSED.

GRANGER, C. J., not sitting. WATERMAN, J., takes no part.