ALICE MARIE HAWLEY AULTMAN et al., Appellees, v. MEARL O. MEYERS, Executor, Appellant; CRAWFORD COUNTY TRUST & SAVINGS BANK, Appellee.

No. 47258.

(Reported in 33 N. W. 2d 400)

AUGUST 2, 1948.

Floyd E. Page, of Denison, for appellant.

L. W. Powers and L. V. Gilchrist, both of Denison, for appellees.

BLISS, J.—There is no material disagreement over the facts. The matter for determination is whether they sustain the court's decree. On December 2, 1930 Sada A. Ford executed her will by which she made bequests of $1000 each to the plaintiffs and to another niece and nephews. After making other dispositions she directed that her two-hundred-thirty-nine-acre farm be sold and two charitable bequests of $1000 and $1500 be paid from the sale proceeds, and the remainder be divided equally among the Christian Home at Council Bluffs, the Eastern Star Masonic Home at Boone, and the Eastern Star Orphanage Relief Fund. The plaintiffs were made equal residuary legatees, and the defendant Mearl O. Meyers was nominated as executor.

On July 16, 1931 Sada A. Ford, as donor, and the defendant Crawford County Trust & Savings Bank, as trustee, executed the trust agreement involved herein. The instrument states: "I * * * hereby give, devise and set over to the Crawford County Trust & Savings Bank" her farm and personal property described in Exhibit A attached to the trust agreement "to be held in trust for the donor, Sada A. Ford, upon

the trusts, terms [and] conditions herein stated. That the trustee herein agrees to hold, manage, invest and distribute, the property for the donor to the donor as hereinafter provided." The instrument further provides that the trust property shall be invested under order of the district court and the entire net income and any part of the corpus of the trust fund needed shall be paid to the donor as long as she may live; that the real estate, with the grain, livestock and other personal property thereon, may be sold and the proceeds invested in approved securities as the court may direct, "but said real estate shall not be sold without the written consent of the donor." The donor reserved the right to revoke the trust at any time by giving written notice thereof to the trustee. The cause of this litigation arose from the diverse constructions which the parties placed upon the instrument as a whole, and particularly the following provision thereof: "Upon the death of the donor the property of this trust estate remaining shall be divided and distributed as directed by the will of donor herein now made and executed." The will referred to is the one noted above. The personal property listed in Exhibit A, referred to in the trust agreement, consisted of county and road bonds and United States Liberty bonds of an aggregate face value of $30,800. The court records show the administration of the trust from its inception into April 1947. These records were received in evidence subject to the objection of the executor.

On May 24, 1932 a general guardian was appointed for the person and property of Sada A. Ford. Thereafter a succeeding guardian informed the trustee in writing of his appointment, and therein notified the trustee of his revocation of the trust, and demanded possession of the trust property. The trustee having failed to comply with the demand, the guardian on August 22, 1933 filed his petition in court alleging that the trust relation was revoked by the substitution of the guardianship relation, and by the letter of revocation, and prayed for a decree requiring the trustee to fully account for, and to surrender, the trust property to the guardian. In dismissing the petition of the guardian, the district court said:

"When the application for guardian was filed and the orig-

inal appointment of guardian made it was evident that such steps were taken to relieve Sada A. Ford of the small details not embraced in the written agreement in the care of her property, and that such action did not contemplate the revocation of the relationship created by the written agreement. In fact, the application for the guardian was prompted by the officer of defendant [trustee] who had had personal charge of the defendant's part in the creation of such relationship under such written contract, and it is clear that no thought was then entertained, in making such application for a guardian, that the status of Sada A. Ford's property as provided for in the written contract was to be disturbed. * * * In the judgment of this court the appointment of the original guardian for her under the circumstances did not, in law, work a revocation of this trust, and the subsequent appointment of plaintiff to fill the vacancy created by the death of the original guardian would not do so."

Sada A. Ford died February 26, 1947 leaving the will noted herein as her last testament. The executor offered the will for probate, and two nephews and a niece of the testatrix, each of whom was a legatee for $1000 under the will, filed objections to the probate on the ground that the testatrix was of unsound mind when the will was executed. The three charitable institutions which received the bulk of the sale proceeds of the farm and the personal property appeared against the contestants. On July 11, 1947 a stipulation was agreed upon by the contestants and the resisters providing that the objections to the probate of the will be withdrawn and that the farm should be sold by the person appointed by the court to administer the estate to the objectors to the will for $24,000, and that the provisions of the will be carried out. The stipulation was filed on July 14, 1947, and on that date the will was admitted to probate, and Mearl O. Meyers was appointed executor and received letters testamentary on July 15, 1947, on filing a bond of $50,000.

On July 14, 1947 the plaintiffs filed their petition in the proceeding before us alleging some of the factual matters stated herein, and that as residuary legatees they had an interest in the amount of costs and fees which will be taken from the trust

estate if it is turned over to the executor, and that if the trustee be not restrained it may surrender the trust estate to the executor. They pray that the trustee be restrained from so doing and that it be directed to make distribution of the estate among those who are beneficiaries thereunder. The trustee, apparently with no thought of surrendering the property to the executor, filed answer joining in the relief asked by plaintiffs.

The executor filed motion for dismissal of the petition and, subject to the ruling thereon, answered and alleged that the probate court had taken jurisdiction of the estate prior to the commencement of the action, that administration was proceeding, and claims against the estate in excess of $9000 had been filed, and that a court of equity, under the circumstances, could not rightfully interfere therewith. Dismissal of the plaintiffs' petition was asked in each pleading.

By findings, conclusions, and order filed, the court found that the trust agreement had been duly executed by competent parties conveying real estate and transferring personal property to the trustee, thereby making permanent provision for the care and disposal of her property, subject to her consent to the sale of real estate, and, to her right to revoke the agreement, which revocation had never been exercised during the donor's life, nor effected by her death; that administration and distribution of the estate would be by the district court and it was of no importance whether it be in probate by the executor, or in the forum of equity by the trustee. The court concluded as a matter of law that the earlier decree of the court in the proceeding brought by the guardian to terminate the trust was res judicata against the executor as to the issue herein. Decree was entered in favor of plaintiffs and the trustee, and against the executor.

It is the contention of the appellant that Sada A. Ford intended the trust agreement to be in force and effect only during her life, and that upon her death all of her property, including that covered by the trust agreement, should pass by and be disposed of by her will, and be distributed by the executor of her estate.

It is our conclusion from the trust agreement and the will

and the record as a whole that the intention of the deceased was as contended for by the appellant. This conclusion is quite unavoidable if the testimony of the attorney who drew the trust agreement, which was rejected by the court, be considered.

I. Appellant urges a number of propositions for a reversal. We will discuss two of them. The trial court relied largely upon the judgment of the district court in 1934, hereinbefore mentioned, which was adverse to the guardian of Sada A. Ford. It was the conclusion of the trial court that said judgment was res judicata against the executor of the main issue in the case then before the court. In this the court, in our judgment, erred.

The principles of res judicata are well settled and have often been announced by this court. Before the doctrine is applicable in any case there must be certain recognized identities in the adjudicated case and in the case on trial. It is particularly essential that there be identity in the cause of action, issue, or matter for decision. As said in Wheatley v. City of Fairfield, 221 Iowa 66, 75, 264 N. W. 906, 911:

"It is a well-established rule, of almost universal application, that a judgment, if rendered by a court of competent jurisdiction, on the merits, constitutes a complete bar and estoppel to a subsequent action between the same identical parties based upon the *same claim or demand or cause of action.*" (Italics supplied.)

For other authorities and decisions relating to res judicata or to estoppel to relitigate matters before litigated, see 30 Am. Jur., Judgments, section 161 et seq.; King City v. Southern Sur. Co., 212 Iowa 1230, 238 N. W. 93; Phoenix Finance Corp. v. Iowa-Wisconsin Bridge Co., 237 Iowa 165, 174 et seq., 20 N. W. 2d 457; Kunkel v. Eastern Iowa L. & P. Coop., 232 Iowa 649, 656–660, 5 N. W. 2d 899, and cases cited.

Conceding, but not deciding, the matter of identity of parties, it must be said that the controlling issue and the matter for decision in the two cases were not the same. In the earlier case the matter in controversy was whether the existence of the guardianship, and the attempted revocation of the trust by the guardian, put an end to the trust relation. The court found that

the donor was competent to make the agreement, and that it authorized the trustee to manage the property during the lifetime of the donor and to pay her the net income therefrom, unless the trust was revoked by her as provided in the instrument. It found that she had not revoked it, and that the creation of the guardianship did not work a revocation thereof. Those matters are not involved in the case at bar, and the issue and matter for determination in this case was not involved in the guardian's case. There are new factors in this case which were not present in the other case. These are the death of the donor, the taking effect of her will, and the provision in the trust agreement that upon the death of the donor the trust estate should be distributed as directed by her will. The issue for determination by the trial court was whether the trustee or the executor should make the distribution. It was not before the court, nor properly determinable, nor was it adjudicated, in the earlier action.

II. The appellees argue that the trust agreement is not equivocal or ambiguous and that it clearly directs the distribution of the trust estate by the trustee. They insist that the words in the trust agreement that the property should be distributed "as directed by the will of donor herein now made and executed" simply designate the legatees and their respective shares, and do not designate who is to be the distributor. If we should accept the premise of appellees that the instrument is not ambiguous, we would be constrained, nevertheless, to disagree with their conclusion. It is our conclusion that the quoted direction in the trust instrument was intended by the donor to designate not only the legatees and their shares, but also that the executor of her estate should make the distribution. Such intention appears from the agreement and the will and the reasonable inferences from the entire record and the circumstances existing when the instruments were made, without the rejected testimony. Every part of the will should be given effect. The words "as directed by the will" meant the will in its entirety and all of its implications.

The testatrix knew when she made the will that administration on her estate would be necessary. She knew when she executed the trust agreement that administration of her estate

in court would still be necessary. The trustee was not authorized to attend to her burial, or to pay her debts, costs of administration, and claims against her estate, or to administer any property not included in the trust. There no doubt was such property—her personal effects, household furnishings, perhaps, and very likely a residue of money from unexpended income. The shares of the beneficiaries under the will could only be determined after the debts of decedent and claims against her estate were filed and allowed. The proper forum in which to attend to these matters was in probate. The testatrix when she executed the trust agreement and the will must have had this in mind. The trustee also realized it when on April 10, 1947 it made application to the court for an order which it procured authorizing it to employ counsel to defend the will.

 III. The lawyer who drew the trust agreement had previously had a number of conferences with Sada A. Ford about the instrument. Officers of the bank were present at these meetings. The purpose of the trust was to relieve the donor of the burden of managing the real and personal property of considerable value. This management was to end with her death. There was no need of its further continuance. The executor under supervision of the probate court as provided by law was the person named by her to administer her property including the remainder accounted for to the court by the trustee. In order to inform herself on this matter she made certain inquiries of the attorney, the president, and a director, of the trustee-bank, at one or more of these conferences prior to the execution, and, probably, the drawing, of the trust agreement.

The attorney testified concerning these inquiries as follows:

"Mrs. Sada Ford signed the Trust Agreement in question in my office and before me as a notary.

"Q. Prior to the time she signed it did she make any inquiry of you as to whether or not that would affect the manner of distribution, or who would distribute her property under her will? (Objected to. Incompetent, irrelevant and immaterial. Attempt by parol to vary and contradict the terms of a written instrument.) A. She did.

"Q. What did she ask you? What did she say?

"Mr. Powers: Same objection to each and all of them. I object to the questions propounded to this witness.

"A. She wanted to know if that would change the effect that Mearl Meyers would be the executor of her estate after she was gone. And we told her no. Q. By 'we' who do you mean? A. Dr. Carr (bank president) and I and Art King (bank director).

"Mr. Powers: I move to strike the answer for all the reasons urged against the question. Attempting to vary and contradict and change the' terms of a written instrument.

"Q. What did she say at the time the trust agreement was signed, before she signed it, with respect to whether or not she wanted Mearl Meyers [the executor] to administer her estate when she died?

"Mr. Powers: Objected to. Incompetent, irrelevant and immaterial. Leading and suggestive. Attempt by parol to vary and contradict the terms of a written instrument.

"A. She wanted the will, as quick as she died, she wanted the trust agreement to stop and the will to take effect at that time.

"Mr. Powers: I move to strike the answer for all the reasons urged against the question and the additional one that it is a conclusion."

Of this testimony the court, in its "Conclusions of Law" said:

"The oral testimony offered herein upon the trial of the case for the purpose of establishing the expressed intent of the donor as to who should administer her property is not admissible and cannot be considered by the court."

This was an erroneous conclusion and prejudicial to the appellant. The only material fact in controversy was the intention of the donor as to whether the trustee or the executor should distribute the trust estate after her death. The donor was the moving party in the transaction. She had made a will disposing of all of her property, including the residue of the trust estate, and had nominated the executor. The ascertain-

ment of her intention was important. The litigants were not in agreement as to her intention. The trust agreement was open to different constructions. On the face of the instrument there was some doubt, uncertainty and ambiguity. There was reasonable basis and fair debate as to its meaning on the point in question. It was susceptible to each of the constructions which the opposing parties placed on it. In such a situation it has uniformly been held by this court that not only evidence of the circumstances surrounding the parties and the transaction, and their conduct at the time, is admissible as bearing upon their intentions, but also what they may have said at or before the execution of the instrument which bears upon that intention. Such evidence does not change or contradict the wording of the instrument, but only explains, clarifies, or removes any doubts as to its meaning. As said in Chamberlain v. Brown, 141 Iowa 540, 550, 120 N. W. 334, 338:

"Of course oral testimony cannot be allowed to vary the terms of a written lease, but it is sometimes admissible in support of the contract to show in what manner it was understood by the parties who made it."

In Seeger v. Manifold, 210 Iowa 683, 688, 231 N. W. 479, 481, the court said:

"It is also a well recognized rule of law that, when the terms of a contract are ambiguous, then it is proper to look to the conversations, statements, circumstances, negotiations, and conduct of the parties, as an auxiliary to the construction to be placed upon the same."

Like decisions will be found in many other cases, of which we cite the following: Tucker v. Leise, 201 Iowa 48, 50, 51, 206 N. W. 258; State v. Butka, 230 Iowa 928, 932–934, 299 N. W. 420; Iowa Elec. Co. v. Home Ins. Co., 235 Iowa 672, 677, 678, 17 N. W. 2d 414; First Nat. Bk. v. Branagan, 198 Iowa 453, 457, 198 N. W. 659, 36 A. L. R. 548; Mealey v. Kanealy, 226 Iowa 1266, 1278, 286 N. W. 500, 131 A. L. R. 945; Vorthmann v. Great Lakes Pipe Line Co., 228 Iowa 53, 60–62, 289 N. W. 746; West Branch State Bk. v. Farmers Union

950

Exchange, 221 Iowa 1382, 1384, 1385, 268 N. W. 155; Thompson v. Locke, 65 Iowa 429, 438, 21 N. W. 762; Shuler v. Dutton, 75 Iowa 155, 157, 39 N. W. 239; Kelley & Mahon v. Fejervary, 111 Iowa 693, 698, 83 N. W. 791; Dunn v. Dunn Trust, 219 Iowa 349, 355–358, 258 N. W. 695; Rath v. Schoon, 192 Iowa 180, 183, 182 N. W. 180; Cedar Rapids Sav. Bk. & Tr. Co. v. American Mtg. & Sec. Co., 208 Iowa 150, 154, 155, 225 N. W. 339; Oskaloosa College v. Western Union Fuel Co., 90 Iowa 380, 383, 384, 54 N. W. 152; Wallace v. Ryan, 93 Iowa 115, 117, 61 N. W. 395.

The testimony as to the inquiries of the donor bore directly upon her intention and purpose. It was not inconsistent with the instrument itself but clarified that which was open to question therein.

The order and decree is reversed and upon a proper accounting by the trustee and settlement of the trust, the court is directed to order said trust property delivered to the executor of the estate of the testatrix.—Reversed and remanded.

All JUSTICES concur.