**HARRISON SHEET STEEL CO., d/b/a Harrison Steel Cabinet Co., Appellant,**

v.

**C. H. MORGAN, d/b/a Morgan Investment Company, and H. E. Brown, Jr., Appellees.**

No. 16120.

United States Court of Appeals Eighth Circuit.

July 17, 1959.

Robert E. Dreher, Des Moines, Iowa (George A. Wilson and Brunk, Janss & Dreher, Des Moines, Iowa, were with him on the brief) for appellant.

J. N. Diehl, Newton, Iowa, (B. C. Clayton, Newton, Iowa, was with him on the brief) for appellees.

Before SANBORN, VAN OOSTERHOUT, and MATTHES, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Plaintiff appeals from final judgment entered after a trial to the court dismissing its claim for damages against the defendant Morgan[1] for alleged breach of contract to purchase 150 kitchen units. Jurisdiction based upon diversity of citizenship and the jurisdictional amount is established.

Plaintiff in its complaint alleges that defendant, on or about January 20, 1953, agreed to purchase within one year 150 groups of kitchen cabinets and countertops, referred to by the parties as "kitchens," the agreement covering 100 Kitchens No. 1 at $149.50 each and 50 Kitchens No. 2 at $237.24 each. Defendant purchased and paid for 12 kitchens, and thereafter refused to complete said contract, by reason of which plaintiff claims it suffered damages of $13,866.78.

Defendant by answer raised eight defenses, among them: a general denial; disability of plaintiff as a foreign corporation, not authorized to do business in Iowa, to bring this suit, by reason of § 494.9, Iowa Code Annotated; breach of warranty; the denial that defendant ever contracted to purchase 150 units; and a plea for reformation because of mutual mistake.

The trial court entered final judgment dismissing the complaint. It appears from the trial court's findings of fact and conclusions of law that the dismissal was based upon the following grounds:

1. The contract is an Iowa contract. Plaintiff, a foreign corporation, had not obtained authority to do business in Iowa, and § 494.9, I.C.A., prohibits the bringing of this action.

2. The contract is ambiguous. The contract properly construed did not require Morgan to purchase 150 kitchens, but allowed him a 10 per cent discount if he purchased such number.

The court states that the foregoing determinations make a consideration of the breach of warranty defense unnecessary. No mention is made of the reformation issue, likely for the same reason.

We are convinced that the judgment of the court for the defendant must be affirmed on the merits.

There is a serious question whether the transaction here involved falls within the field of interstate commerce,[2] which question if answered in the affirmative would make § 494.9 inapplicable. We have chosen to discuss and decide this case on the merits. Accordingly, we will not encumber this opinion with the facts and law relating to the § 494.9 defense, but will summarize the facts bearing upon the interpretation issue.

Plaintiff, an Illinois corporation engaged in the manufacture of kitchen cabinets and countertops, as supplier, and defendant, as purchaser, on or about January 20, 1953, entered into a written contract relating to kitchens, which, so far as material here, reads:

"In Consideration of One and No/100 Dollars ($1.00) and other good and valuable considerations,

---

1. Morgan made Brown a third party defendant upon the theory that Morgan if held liable would have a right of contribution against Brown as a partner. This issue is not reached. Morgan for the purpose of the opinion will be treated as the sole defendant.

2. See Caldwell v. North Carolina, 187 U. S. 622, 23 S.Ct. 229, 47 L.Ed. 336; Palmer v. Aeolian Co., 8 Cir., 46 F.2d 746, 748.

Supplier agrees to furnish kitchen cabinets to Purchaser as follows. Cabinets shall be as described in the Supplier's price sheet and literature.

"Kitchen No. 1. [Component cabinets described by plaintiff's number.] Net price to Purchaser—One Hundred Forty-Nine and 50/100 Dollars [$149.50) f. o. b. factory, Chicago, Illinois.

"Kitchen Unit No. 1 subject to $13.59 discount as provided for in Paragraph 3.

"Kitchen No. 2. [Component cabinets described by plaintiff's number.] Net price to Purchaser—Two Hundred Thirty-Seven and 24/100 Dollars ($237.24) f. o. b. factory, Chicago, Illinois.

"Kitchen Unit No. 2 subject to $21.56 discount as provided for in Paragraph 3.

"Supplier agrees in the event of a future general price rise to give Purchaser ninety (90) days notice of increased prices and the option to cancel the balance of Purchaser's order.

"Purchaser agrees to order a minimum of one hundred fifty (150) of either or both complete kitchen units hereinbefore described as Kitchens No. 1 and 2 for shipment from the factory within twelve (12) months from date. Kitchen units will be ordered for shipment from the Supplier in minimum lots of ten (10) units at one time.

"In the event that the Purchaser does within one year from this date purchase, receive and pay for 150 kitchen units of kitchen #1 and #2 or a combination of both, then the Supplier will allow to the Purchaser a discount of $13.59 for each unit described as Kitchen No. 1 and $21.56 for each unit in Kitchen No. 2 that is purchased and paid for by the Purchaser. Instead of waiting until 150 units have been purchased and paid for, the Purchaser may apply to the Supplier to credit subject discounts against the number for the last 20 units of the 150 unit lot.

"Discount to the Purchaser shall be ½ of 1% in 10 days after mailing of invoice and net 30 days.

"Supplier reserves the right to limit shipment for not more than 20 units at any one time and subject to credit terms from time to time."

An Addendum to the contract provides:

"Supplier agrees in the event of a future price decrease to advise the Purchaser of same and to extend to Purchaser the lower prices applicable to the items outlined in this agreement upon the effective date of the price decrease."

Defendant is a house builder at Newton, Iowa. Under defendant's normal method of operation the houses are sold before construction commences. The houses are built only after they are ordered. Defendant built 40 to 50 houses in 1951, 57 in 1952, and 101 in 1953.

Plaintiff was represented in the early negotiations leading up to the contract by Ryser who was president and principal stockholder of Kitcheneers, Inc., an Iowa corporation, which acted as a distributor of plaintiff's products. Prior to entering into the contract here involved defendant purchased its kitchens from another manufacturer. Plaintiff was anxious to obtain defendant's business, and offered defendant through Ryser a price quotation below the price available to distributors. It is stipulated that Kitcheneers, Inc., was the agent of plaintiff, and that Ryser was the agent of Kitcheneers. Whether Ryser was acting for himself or for Kitcheneers is of no importance in this case. It is undisputed that Ryser or Kitcheneers was not acting in this transaction as a distributor, but as a manufacturer's representative or agent for a 5 per cent commission. It was at all times contemplated that any agreement entered into would be a direct agreement between plaintiff and defendant. It is established that Ryser on plaintiff's be-

half and with its approval offered to sell defendant Kitchen No. 1 for $135.91 and Kitchen No. 2 for $215.68.[3]

While, without doubt, plaintiff hoped defendant would become a substantial user of its kitchens, the "original negotiations" were not conditioned upon the order of any specific number of kitchens. Ryser testified, "Nothing * * * required Mr. Morgan to order any number of kitchens. The statement they could be ordered out in reasonable quantities was based on a letter I had written Harrison Steel Cabinet that ten to fifteen kitchens would be reasonable." Morgan as a witness stated that the 150 kitchen figure was not mentioned in connection with the original price quotation and negotiations, and was first brought up by Okawara, plaintiff's credit manager, in a phone call he made to Morgan shortly before the contract was executed. In such conversation Morgan testified Okawara stated, "Now this deal is all right with us, but we've got to have some assurance that you are going to use the 150 kitchens." After Morgan refused to commit himself to purchase any specific number of kitchens, Morgan states that Okawara said, "the only way Harrison would go ahead with the deal was that in the event that we didn't use the 150 kitchens that we would owe them 10% additional," to which Morgan states he replied, "I told him that I wouldn't under any consideration consider signing a contract on that basis, but that if he wanted to add ten percent to the contract to be returned to us in a discount at such time as we did use the kitchens and so that we would build up an asset instead of building up a liability for the future, that I would discuss it with Mr. Brown, and I was sure that he could go ahead and draw the agreement on that basis."

The contract was drawn by Okawara and provides for a price increase on each kitchen in the amount of 10 per cent above the price previously quoted. Oka-

wara admits making the phone call and the discussion about the price change, but his version of the price change is that he insisted upon it because he was uneasy about defendant's credit standing. The facts will be further discussed hereinafter.

■ It is well settled that in a non-jury case the findings of fact of a trial court may not be set aside "unless there is no substantial evidence to sustain it, unless it is against the clear weight of the evidence, or unless it was induced by an erroneous view of the law." Pendergrass v. New York Life Ins. Co., 8 Cir., 181 F.2d 136, 137. The plaintiff has failed to demonstrate that the trial court's decision was induced by any erroneous view of the law.

■ The primary rule for the construction of contracts in Iowa, and quite generally, is that the court must if possible ascertain and give effect to the mutual intention of the parties. The contract must be construed as a whole, and the intention of the parties must be collected from the entire instrument. City of Harlan, Iowa v. Duncan Parking Meter Co., 8 Cir., 231 F.2d 840, 841; E. I. Du Pont De Nemours & Co. v. Claiborne-Reno Co., 8 Cir., 64 F.2d 224, 227, 89 A.L.R. 238; Rotterman v. General Mills, Inc., 245 Iowa 229, 61 N.W.2d 718, 721; Aultman v. Meyers, 239 Iowa 940, 33 N.W.2d 400, 405; 12 Am.Jur. Contracts, § 241.

■ When a written contract is ambiguous, parol evidence of circumstances under which it was made and negotiations that preceded the contract are admissible to resolve the ambiguity and as an aid in determining the real intention of the parties to the contract. City of Harlan, Iowa v. Duncan Parking Meter Co., supra; Berg v. Erickson, 8 Cir., 234 F. 817, 823, L.R.A.1917A, 648; Aultman v. Meyers, supra; State v. Butka, 230 Iowa 928, 299 N.W. 420, 422.

---

3. There was a separate oral arrangement, not material to the present issue, between Kitcheneers and Morgan providing Kitcheneers would pay freight and warehouse the kitchens for $8 a kitchen.

■ An ambiguous contract will be construed most strongly against the parties preparing it. E. I. Du Pont De Nemours & Co. v. Claiborne-Reno Co., supra; City of Harlan, Iowa v. Duncan Parking Meter Co., supra; Pazawich v. Johnson, 241 Iowa 10, 39 N.W.2d 590.

The court properly applied the foregoing legal principles in reaching its decision.

■ Parol evidence of fact surrounding the execution of the contract, including negotiations between the parties, was introduced by both parties and received without objection. Plaintiff made no claim in the trial court that it was relying upon an integrated unambiguous contract which could not be varied by parol evidence. In its pleadings it does not state that the contract relied upon is an integrated written contract, and a copy of the written contract is not made a part of the complaint. The complaint alleges that the defendant agreed to purchase 100 Kitchens No. 1 and 50 Kitchens No. 2, while the contract provision is that the plaintiff is to purchase 150 of either or both kitchens. Thus, it is not at all clear that plaintiff in its complaint is suing or relying upon the written contract. The plaintiff in its main brief on this appeal bases its argument upon its interpretation of the parol evidence, and states:

> "Aultman v. Meyers, 239 Iowa 940, 33 N.W.2d 400, holds that evidence surrounding the making of a contract, ambiguous or unambiguous, is admissible. So does State v. Butka, 230 Iowa 928, 299 N.W. 420."

Under such circumstances the court committed no error in considering the parol testimony

■ Moreover, we agree with the trial court's determination that the written contract is ambiguous. The contract was drawn by Okawara, plaintiff's credit manager. It is very indefinite in numerous respects. The supplier does not specifically obligate itself to furnish 150 or any other number of kitchens. The units to be furnished "shall be as de-scribed in the Supplier's price sheet and literature." What price sheet and what literature? If conflicting descriptive literature is outstanding or subsequently issued, what piece of literature applies? The supplier agrees in event of future general price increases to give purchaser 90 days notice and option to cancel, but does not expressly guarantee price for such period or any period. As the contract is written the discount applies only if 150 kitchens are delivered and paid for within one year. No provision of the contract requires supplier to fill orders within any specified time.

In one paragraph of the contract the purchaser agrees to order 150 kitchens. In the next paragraph it is provided that in event 150 kitchens are received and paid for a discount of $13.59 will be allowed on each Kitchen No. 1 and $21.56 on each Kitchen No. 2. Reference to these discounts is made earlier in the contract at the point where the price of the kitchens is stated.

We think there is a serious question whether the contract is void for lack of mutuality. See E. I. Du Pont De Nemours & Co. v. Claiborne-Reno Co., supra. We do not consider such issue as it has not been raised in the pleadings.

It is our conclusion that upon the record the trial court was fully justified in holding the written contract ambiguous.

■ When the contract is considered in the light of the surrounding circumstances, and the rules of interpretation heretofore stated are applied, substantial evidentiary support is found for the trial court's conclusion that the parties did not intend that Morgan be obligated to purchase 150 kitchens. In determining whether there is substantial evidentiary support for the trial court's findings, we must view the evidence in the light most favorable to the prevailing party. The trial court has a right and duty to determine credibility of witnesses. The record shows that Morgan had a past record of building considerably fewer than 150 houses annually, and

that when Okawara proposed the 150 figure Morgan refused to obligate himself to purchase that number or any other number of kitchens. He accepted instead Okawara's alternate proposition that the quoted price of each kitchen be marked up 10 per cent, with the further provision that such price increase be refunded in the form of a discount if the purchase of 150 units was completed within a year.

We can find no basis for saying that the trial court was not warranted in accepting Morgan's version of the negotiations. Okawara admits the telephone conversation with Morgan and concedes that the talk was the cause of the 10 per cent increase above the previously quoted price. Okawara did not squarely deny Morgan's testimony. He attempted to attribute the price increase to uncertainty about Morgan's credit rating. The court rejected this credit theory, stating that Morgan had offered to pay C.O.D., but that plaintiff had shipped out the kitchens ordered on open account. The court then states:

> "Why then, would Morgan agree to pay an added 10% for each kitchen unit over and above the original price quoted to him? It is the opinion of this Court that the ambiguous language contained in the contract could, and should, reasonably be interpreted as follows: that Morgan would get the benefits of the lesser original price quoted to him *only* if he purchased 150 units in one year, and that if he purchased less than 150 units, he must pay a higher price for each unit. If the contract were interpreted to mean that Morgan was obligated in any event to purchase 150 units in one year, there would have been no reason to raise the cost of each unit, and then provide for a 10% discount in a separate paragraph. One paragraph, obligating Morgan to purchase 150 units at the price originally offered, would have sufficed."

We have carefully considered the entire record and all contentions urged. We are convinced that plaintiff has failed to demonstrate that the trial court's decision is not supported by substantial evidence or that it was induced by an erroneous view of the law.

 Plaintiff, in a paragraph of its brief, urges that the court erred in taxing to it the cost of certain depositions taken by defendant not used at the trial. This question was raised below by objection to bill for costs. In overruling the objection the trial court states that the depositions not used were reasonable, proper, and necessary. The trial court has a wide discretion with regard to taxation of costs of depositions including those not used at the trial. 6 Moore's Federal Practice, para. 54.77[4], p. 1358; Harris v. Twentieth Century-Fox Film Corporation, 2 Cir., 139 F.2d 571. Plaintiff has wholly failed to show that the court abused its discretion in taxing costs.

Affirmed.