CLINTON P. SHOCKLEY, Appellee, v. PAUL DAVIS DRY GOODS COMPANY, Appellant.

**CONTRACTS: Performance or Breach—Readiness and Ability to Per-**
1 **form.** In an action by an architect on a contract of employment to draw plans and specifications, on the claim that the owner abandoned the contemplated construction, the all-important issue is the readiness, ability, and willingness of the architect to carry out his part of the contract.

**DAMAGES: Liquidated Damages (?) or Penalty (?)** An agreed sum
2 as damages will be treated as "liquidated," even if not so labeled, when from all the attending facts and circumstances it is evident that the parties must have so intended.

**TRIAL: Instructions—Assumption of Abandonment of Project.** In-
3 structions may assume that a building project was admittedly abandoned when both parties concede throughout the trial that such was the fact.

**DAMAGES: Assessment—Authorized Remittitur.** Error of the jury in
4 assessing the amount of actual damages that could be allowed under the instructions may be cured by a remittitur. (See Book of Anno., Vol. 1, Sec. 11550, Anno. 305 *et seq.*)

Headnote 1: 5 C. J. p. 274 (Anno.)   Headnote 2: 17 C. J. pp. 935, 936, 939.   Headnote 3: 38 Cyc. p. 1670.   Headnote 4: 29 Cyc. p. 1020.

*Appeal from Black Hawk District Court.*—H. B. BOIES, Judge.

NOVEMBER 24, 1925.

THE opinion states the case.   Verdict and judgment for plaintiff, and the defendant appeals.—*Affirmed.*

*Pike, Sias, Zimmerman & Frank,* for appellant.

*J. D. Liffring* and *McCoy & Beecher,* for appellee.

STEVENS, J.—On August 22, 1922, appellant, Paul Davis Dry Goods Company, employed appellee, an architect, to design and prepare all necessary drawings, plans, and specifications for a five-story store and office building to be erected at the corner of West Fourth and Commercial Streets in the city of Waterloo, and to supervise the construction thereof.   The agreement, which is in writing, provided for compensation to appellee as follows: 5 per cent of the total cost of the building and certain fixtures, payments to be made at intervals, and, "in the case of suspension or abandonment of the work or project after the architect has commenced work thereon, the owner shall pay the architect all actual expense incurred by the architect in connection with the matter, and in addition thereto the sum of $2,500."   The contract also provided that:

1. CONTRACTS: performance or breach: readiness and ability to perform.

"It is understood that the estimated cost of the building is $250,000, and should it be impossible to secure one or more bona-fide bids from reliable contractors upon the plans and specifications as prepared by the architect at a price not exceeding the estimated cost of the building, then the architect shall, if desired by the owner, change or amend the plans and specifications in such manner as may be found necessary to secure bids from reliable contractors at not more than the estimated cost, providing that such change does not include redrafting of general plans.   If general plans are changed or redrafted, the owner shall pay the actual expense thereof."

No completed drawings, plans, or specifications were prepared by appellee, nor was the contemplated building erected by appellant.   This action is brought to recover under the provision of the contract quoted above: that is, for the value of services actually rendered, and $2,500, the sum agreed upon in case of the suspension or abandonment of the work or project as therein provided.   Prior to entering into the contract, appellant made

all necessary financial arrangements to provide funds for the construction of the building, which, as appears from the clause of the contract quoted above and the testimony of the parties, was to cost not to exceed $250,000. Paul Davis, president and treasurer of the dry goods company, had seen, or knew of, a building then in process of construction at Davenport, which, according to the testimony of appellee, he desired, so far as possible, to duplicate. Appellee employed an assistant in his office at Waterloo, and immediately commenced the work of preparing plans and specifications for the building. Having familiarized himself with the kind of building desired by appellant, appellee went to Davenport, and inspected the building referred to in that city. Upon his return, he immediately informed Davis that a building similar to the Davenport building would cost far in excess of $250,000. Davis, according to appellee's testimony, then informed him that he would communicate with him later, which he did, requesting him to defer the matter of completing plans until further advised. Later, the ground at the corner of Fourth and Commercial Streets was sold to the Hawkeye Building Corporation, and a building has been erected thereon.

Sometime in March, 1923, Davis and White, officers of the dry goods company, and appellee met at the office of Mr. Pike, an attorney in Waterloo, for the purpose of discussing and settling for the services rendered by appellee. No agreement was reached, but, on the same or the following day, appellee telephoned Davis that he had decided to insist upon the amount due him by the terms of the contract.

I. The argument of counsel is devoted largely to the subject of the proper interpretation of the provisions of the contract quoted above. The court instructed the jury that, as some services were rendered by appellee, he was entitled to recover some amount; that the provision of the contract fixing the estimated cost of the building at $250,000 did not require appellee to design a building that would cost exactly that amount, but one that would be ''somewhere reasonably near the estimated cost of $250,000;'' and that the contract required appellee to change or amend his plans so that bids could be obtained from reliable contractors in accordance with the foregoing interpretation

thereof. The court further instructed the jury that "he did not himself breach the contract by refusing to draw plans for the contemplated building so that the same could be built for a sum reasonably near the estimated cost of $250,000," and also that the provision for the payment of $2,500 in the event the project was abandoned after the services of appellee were commenced, should be treated as liquidated damages.

Exceptions were preserved to all of the instructions referred to. The argument for appellant proceeds on the theory that the evidence conclusively showed that appellee breached the contract by admitting his inability to comply therewith, and by failing to furnish plans for a building costing not to exceed $250,000; and that the amount fixed was intended by the parties as an absolute limitation as to the kind of a building desired. Neither party made a conclusive showing of fact, but, on the contrary, the evidence is in direct conflict on the issue as to who breached the contract. Appellee testified that he was always ready, able, and willing to carry out its terms, and that he employed assistants for that purpose, and devoted some two or three weeks to the preparation of plans for the building. His testimony that a building substantially like the one in Davenport would cost approximately $350,000 is not controverted. It seems to us that the vital question at this point is not whether the provision of the contract fixing the estimated cost of the building at $250,000 should be interpreted as claimed by appellant or as announced by the court, but that it was whether the appellee was ready, able, and willing to comply with the terms of the contract, which required him to change or amend the plans so as to bring the cost of the building within that sum. No plans were completed, and consequently no bids were received from contractors for the erection of the proposed structure. The most it was possible for appellee to do was to offer testimony to the effect that a building suitable for the purposes intended could have been designed and constructed for an amount not exceeding $250,000, or very near that sum. Even if it were conceded that the interpretation placed upon the contract by the court in its instructions is erroneous, it could not have been prejudicial to appellant. Appellee did not fail to comply with the contract if it was abandoned by appellant. If this occurred, it was impossible

for him to so comply. Proof that appellee informed appellant that the building at Davenport could not be duplicated for the estimated amount is by no means sufficient to prove that he breached the contract.

Whether the provision of the contract calling for the payment to appellee of $2,500, if the project was abandoned after his services began, should be treated as liquidated damages or as a sum agreed upon in the nature thereof, is quite immaterial. Manifestly, compensation on the basis of a *quantum meruit* for the services actually rendered would not be adequate. Five per cent of the total estimated cost of the building would have been $12,500. Evidence was introduced which tended to show that, had the contract been carried out, appellee would have received a substantial profit. He was entitled to some of the benefits of the contract, and the parties evidently had this in mind when the sum named was agreed upon. It was not necessary that the stipulated amount be labeled "liquidated damages," if that was intended, as courts look to all the circumstances in such cases, and give effect to the real purpose and intention of the parties. The amount is not unconscionable or inequitable; and, as it was agreed upon between the parties, we think, under the circumstances of this case, it should not be treated as a penalty. *Elzey v. City of Winterset*, 172 Iowa 643; *Sanford v. First Nat. Bank*, 94 Iowa 680; *Kelly & Mahon v. Fejervary*, 111 Iowa 693; *Selby v. Matson*, 137 Iowa 97; *Joeckel v. Johnson*, 178 Iowa 231; *Elzy v. Waterloo, C. F. & N. R. Co.*, 193 Iowa 330; *Pace v. Zellmer*, 194 Iowa 516.

The evidence was without dispute that appellant sold the ground on which the contemplated building was to have been erected, sometime in December, 1922, and that other parties have erected a structure thereon. The court in this connection instructed the jury that appellant thereby abandoned the project, and that this occurred after the services of appellee began. This instruction is complained of on the ground that it is in contradiction of other instructions, and that the most appellee was entitled to was to have the issue of abandonment submitted to the jury. No one claimed upon the trial that the project was

not abandoned, and the instruction was entirely proper. The court placed the burden upon appellee to prove that he was ready, able, and willing to carry out the contract on his part. The issues here involved were submitted to the jury upon conflicting evidence as to whether appellee breached the contract by failing or refusing to design a building as contemplated, and we discover no reversible error in the instructions of the court.

What is here said also disposes of the contention of appellant that its motion for a directed verdict should have been sustained on the various grounds thereof.

II. The jury returned a verdict for $3,000. This was contrary to the court's instructions, which limited the amount recoverable for expenses to $125. Prior to the ruling of the court on appellant's motion for a new trial, appellee remitted the excess. It is contended by appellant that, where liquidated damages are allowed, if the verdict is excessive it must be set aside, and that a remittitur will not in such case be permitted. The error of the jury was in the amount that could be allowed, under the instructions of the court, as actual damages. We think it well settled by the decisions of this court that a remittitur is proper under such circumstances. *Union Merc. Co. v. Chandler,* 90 Iowa 650; *Bell v. Kearns,* 153 Iowa 62; *McCoy v. Treichler,* 90 Iowa 1.

4. DAMAGES: assessment: authorized remittitur.

The arguments of counsel cover a wide field, and we have not attempted to discuss all of the matters reviewed therein. It seems to us that the case turns on the vital questions already disposed of, and that none of the remaining matters discussed possess sufficient merit to justify independent consideration. We find nothing in the record on which reversible error may be predicated. The judgment below is, therefore,—*Affirmed.*

FAVILLE, C. J., and DE GRAFF and VERMILION, JJ., concur.