## HALE *v.* FINCH.

1. A person not notified of an action nor a party thereto, and who had no opportunity or right to control the defence, introduce or cross-examine witnesses, or to prosecute a writ of error, is not bound by the judgment therein rendered.

2. Although words of proviso and condition may be construed as words of covenant, if such be the apparent intent and meaning of the parties, covenant will not arise unless it can be collected from the whole instrument that there was on the part of the person sought to be charged an agreement, or an engagement, to do or not to do some act.

3. Certain language in a bill of sale construed to be a condition and not a covenant.

ERROR to the Supreme Court of the Territory of Washington.

The facts are stated in the opinion of the court.

*Mr. John H. Mitchell* for the plaintiffs in error.

*Mr. Elbridge G. Lapham, contra.*

MR. JUSTICE HARLAN delivered the opinion of the court.

On the first day of May, 1864, the Oregon Steam Navigation Company, then engaged in the transportation, for hire, of freight and passengers on the Columbia River and its tributaries, purchased a steamboat, called the " New World," from the California Steam Navigation Company, then engaged in like business upon the rivers, bays, and waters of the State of California.

The terms of the sale are embodied in a written agreement, from which it appears that the consideration was $75,000, and the covenant and agreement of the vendees, not only that they would not " run or employ, or suffer to be run or employed, the

said steamboat 'New World' upon any of the routes of travel upon the rivers, bays, and waters of the State of California for the period of ten years from the first day of May, 1864," but that its machinery should not be "run or employed in running any steamboat, vessel, or craft upon any of the routes of travel, or on the rivers, bays, or waters of" that State for that period. The Oregon Steam Navigation Company, in that agreement, further stipulated, that, in case of any breach of their covenant and agreement, they would pay the California Steam Navigation Company the sum of $75,000 in gold coin of the United States " as actual liquidated damages,"—such stipulation, however, not to have the effect to prevent the latter from taking such other remedy, by injunction or otherwise, as they might be advised.

On the 18th of February, 1867, the Oregon Steam Navigation Company sold the " New World " to Henry Winsor, Clanrick Crosby, N. Crosby, Jr., and Calvin H. Hale, and executed to Winsor a bill of sale stating the consideration to be $75,000. That instrument, after setting out the covenant of the vendors to warrant and defend the steamboat and all its appurtenances against all persons whomsoever, recited that " it was understood and agreed " that the sale was " upon the express condition " that the steamboat should not run, nor its machinery be used in running, any other steamboat, vessel, or craft, within ten years from the first day of May, 1867, on any of the routes of travel on the rivers, bays, or waters of the State of California, or on the Columbia River and its tributaries.

At the time of the making of that bill of sale Winsor and his associates, with L. D. Howe and A. R. Elder as their sureties, executed an additional writing, similar in all respects to that before mentioned as having been executed by the Oregon Steam Navigation Company on the 1st of May, 1864, except that Winsor and his associates, in the paper by them signed, covenanted and agreed that the " New World " should not, for the period of ten years from May 1, 1867, be run, or suffered to be run or employed, nor its machinery used in any other steamboat on the rivers, bays, or waters of the State of California, or on the Columbia River and its tributaries.

On the 5th of March, 1867, Winsor executed to Hale a bill of

sale of the "New World," reciting a consideration of $75,000, and by the terms of which the former, for himself, his heirs, executors, and administrators, promised, covenanted, and agreed to and with Hale to warrant and defend the title to the steamboat, her boilers, engines, machinery, tackle, apparel, &c.

On the 23d of November, 1867, Hale executed to Finch, the defendant in error, a bill of sale, reciting a consideration of $50,000, and containing among others the following clauses : —

" And I, the said Calvin H. Hale, have, and by these presents do promise, covenant, and agree, for myself, my heirs, executors, and administrators, to and with the said Duncan B. Finch, his heirs, executors, administrators, and assigns, to warrant and defend the whole of said steamboat 'New World,' her engines, boilers, machinery, and all the other before-mentioned appurtenances, against all and every person and persons whomsoever.

" And it is understood and agreed that this sale is upon this express condition, that said steamboat or vessel is not within ten years from the first day of May, 1867, to be run upon any of the routes of travel on the rivers, bays, or waters of the State of California, or the Columbia River or its tributaries, and that during the same period last aforesaid the machinery of the said steamboat shall not be run, or be employed in running any steamboat or vessel or craft upon any of the routes of travel on the rivers, bays, or waters of the State of California, or the Columbia River and its tributaries."

At the same time a separate written agreement was entered into between Finch and Hale, from which it appears that the former, in terms, covenanted and agreed to do various things which have no connection with this case, and need not, therefore, be here specified. It is only important to observe, as to that separate agreement, that it did not embrace any covenant or agreement whatever on the part of Finch against the use of the steamboat "New World," or of its machinery, upon the waters of California, or upon the Columbia River or its tributaries.

The present action was brought against Finch by Hale and those associated with him in the purchase from the Oregon Steam Navigation Company.

The complaint avers that, in all of said transactions, Winsor, as the defendant well knew, represented his co-plaintiffs as well as himself; that the defendant, in violation of his promise and agreement, made at the time he purchased the steamboat, caused, suffered, and permitted the same to be taken to San Francisco, on or about the first day of October, 1868, and from that date up to May 1, 1874, caused, suffered, and permitted it to be run upon the routes of travel on the rivers, bays, and waters of California; that on Oct. 5, 1869, the Oregon Steam Navigation Company sued the plaintiffs and their sureties, Howe and Elder, to recover the sum of $75,000, fixed as liquidated damages for the breach of the covenants and agreements contained in the within memorandum of Feb. 18, 1867,— the ground of said action being that the defendants therein had run the steamboat "New World," or suffered and permitted it to be run, on the rivers, bays, and waters of California, after Nov. 1, 1868, and prior to May 1, 1874, which acts, it is averred, are the same now complained of as constituting a breach of the defendant's alleged agreement of Nov. 23, 1867 (20 Wall. 64); and that, in said action, the Oregon Steam Navigation Company recovered a judgment against the present plaintiffs for $75,000, which sum, with $4,000 expended in defending the suit, they had been compelled to pay.

Judgment is asked against Finch for $79,000 in damages, for the violation of his alleged agreement and promise.

The answer puts in issue all the material allegations of the complaint, except the fact that the steamboat, subsequently to the purchase by Finch, was used upon the waters of the State of California during the period charged.

The defendant, in addition, pleads: 1. That the alleged agreement was void under the Statute of Frauds and Perjuries of the Territory, in that it was not, and is not, to be performed in one year from the making thereof, and was not, nor was any note or memorandum thereof, in writing, signed by the defendant, according to the provision of the statute; 2. That the steamboat was taken to California, and run upon the waters and bays of that State, by the leave and license of the plaintiff, given to the defendant on the first day of July, 1868; 3. That the action

is barred by the limitations of three and six years, prescribed by the statute of the Territory.

There was a verdict for the defendant, in obedience to a peremptory instruction by the court, and the judgment rendered thereon was affirmed by the Supreme Court of the Territory. From that judgment of affirmance this writ of error is prosecuted.

Upon the filing in the Supreme Court of the Territory, of the judgment and mandate of this court, in *Oregon Steam Navigation Co.* v. *Winsor* (20 Wall. 64), that cause was remitted to the court of original jurisdiction, for further proceedings according to law. The defendants therein obtained leave to withdraw, and did withdraw, their answers. Judgment by default was thereupon entered against them for the sum of $75,000, the amount fixed as actual liquidated damages, with interest and costs. Satisfaction thereof was entered at the same term of the court. That judgment, it is contended, by the present defendant, was obtained by collusion between the parties to that action. It is further claimed that it has never, in fact, been satisfied. Whether these charges are true, we need not here inquire. And it is scarcely necessary to say that that judgment is not conclusive of the rights of the present defendant. He was not a party to that action, nor notified of its pendency. He had no opportunity or right, in that case, to controvert the claim of the Oregon Steam Navigation Company, to control the defence, to introduce or cross-examine witnesses, or to prosecute a writ of error to the judgment. *Railroad Company* v. *National Bank*, 102 U. S. 14. Besides, that case was founded upon the written covenant and agreement of Winsor and his associates with the Oregon Steam Navigation Company, while the liability of Finch to the plaintiffs in this action depends altogether upon the construction which may be given to the bill of sale executed to him by Hale. If the record of the case of the *Oregon Steam Navigation Co.* v. *Winsor*, &c., is competent evidence in this action, for any purpose, it can only be to show the amount of damages which Winsor and his associates have sustained, by reason of the " New World " being run on the waters of California after Finch became owner.

But the liability of those parties for such damages arose out

of the covenant and agreement which they made with the Oregon Steam Navigation Company. With that transaction, however, Finch had no connection, and unless he made a similar covenant and agreement with those from whom he purchased, — thereby becoming interested in keeping the covenant and agreement made with that company by Winsor and his associates, — he cannot be affected by the judgment obtained against the latter.

This brings us to the main contention on behalf of the plaintiffs in error; viz., that the language of the bill of sale from Hale to Finch, if interpreted in the light of all the circumstances attending its execution, imports a *covenant* upon the part of the latter that he would not use or permit the use by others, of the steamboat or its machinery, within a prescribed period, either upon the waters, rivers, and bays of California, or upon the Columbia River and its tributaries. If, however, the language, properly interpreted, imports only a *condition*, for breach of which the vendor had no remedy other than by suit to recover the property sold, then it is, as indeed it must be, conceded, that the judgment below is right.

We are of opinion that the latter construction is the proper one.

If we look both at the circumstances preceding, and at those immediately attending, the purchase by Finch, and if we even impute to him full knowledge of everything that occurred, as well when the Oregon Steam Navigation Company made its original purchase, as when it subsequently sold to Winsor and his associates, — all which counsel for plaintiffs contends we are bound, by the settled rules of law, to do, — what do we find?

The written memorandum between that company and the California Steam Navigation Company, in words aptly chosen, shows, as we have seen, an express covenant and agreement, upon the part of the former, that neither the " New World " nor its machinery should be used on the waters of California within ten years from May 1, 1864, and also that a certain sum, as actual liquidated damages, should be paid for any breach of such covenant and agreement. The bill of sale from the Oregon Steam Navigation Company to Winsor and his associates does not contain any words of covenant or agreement. But

that company, in view of its express covenants to the California Steam Navigation Company, took care to exact from its vendees a separate written obligation, in which the latter, in express terms, covenanted and agreed with that company, in like manner as the latter had covenanted and agreed with the California Steam Navigation Company. The next writing executed is the bill of sale from Winsor to Hale. It shows nothing more than a covenant to warrant the title to the steamboat, and makes no reference, in any form, to any waters from which the steamboat should be excluded. Then comes the bill of sale executed by Hale to Finch. Its material portions are the same in substance, and, in language, almost identical with that given by the Oregon Steam Navigation to Winsor. Each contains a covenant and agreement, upon the part of the vendor, simply to warrant and defend the title to the steamboat, its machinery, &c., against all persons whomsoever. But each recites, let it be observed, only an agreement that the *sale* is upon the *express condition* that it shall not be used or employed upon those waters. Upon the sale by the Oregon Steam Navigation Company to Winsor and his associates, the former, as we have seen, was careful to take the separate obligation of the latter, with surety, containing covenants and agreements, described in such terms as to show that the draughtsman, as well as all parties, knew the difference between a covenant and a condition. The same criticism may be made in reference to the separate writing signed by Finch and Hale, at the time of the execution by the latter of the bill of sale to the former. The latter writing shows, it is true, several covenants and agreements upon the part of Finch, but no covenant or agreement in reference to the use of the boat, such as is found in the writings which passed between the California Steam Navigation and the Oregon Steam Navigation, or such as are contained in the separate agreement between the latter and Winsor and his associates.

If, therefore, we suppose (which we could not do without discrediting some of the testimony) that Finch, at the time of his purchase, had knowledge of all the papers executed upon prior sales of the " New World," the absence, as well from the bill of sale accepted by him, as from the written agreement of the

same date, signed by him and Hale, of any *covenant* or *agreement* that he would not use that vessel, or permit it to be used, on the prohibited waters within the period prescribed, quite conclusively shows that he never intended to assume the personal responsibility which would result from such a covenant.

It thus appears that the circumstances, separately considered, militate against the construction for which plaintiff contends.

But if we omit all consideration of the circumstances under which the bill of sale from Hale to Finch was executed, and look solely at the language employed in that instrument, there seems to be no ground upon which the claim of plaintiff can stand. The words are precise and unambiguous. No room is left for construction. It is undoubtedly true, as argued by counsel, that neither express words of covenant, nor any particular technical words, nor any special form of words, is necessary in order to charge a party with covenant. 1 Roll. Abr. 518; *Sant* v. *Norris*, 1 Burr. 287; *Williamson* v. *Codrington*, 1 Ves. 511, 516; *Courtney* v. *Taylor*, 7 Scott, N. R. 749. "The law," says Bacon, "does not seem to have appropriated any set form of words which are absolutely necessary to be made use of in creating a covenant." Bac. Abr., Covenant, A. So in Sheppard's Touchstone, 161, 162, it is said: "There need not be any formal words, as 'covenant,' 'promise,' and the like, to make a covenant on which to ground an action of covenant, for a covenant may be had by any other words; and upon any part of an agreement in writing, in whatsoever words it be set down, for anything to be or not to be done, the party to or with whom the promise or agreement is made may have his action upon the breach of the agreement." Mr. Parsons says, "Words of proviso and condition will be construed into words of covenant, when such is the apparent intention and meaning of the parties." 2 Parsons, Contracts, 23. There are also cases in the books in which it has been held that even a recital in a deed may amount to a covenant. *Farrall* v. *Hilditch*, 5 C. B. N. s. 840; *Great Northern Railway Co.* v. *Harrison*, 12 C. B. 576; *Severn and Clerk's Case*, 1 Leon. 122. And there are cases in which the instrument to be construed was held to contain both a condition and a covenant; as, "If a man by indenture letteth lands for years,

provided always, and it is covenanted and agreed between the said parties, that the lessee should not alien." It was adjudged that this was "a condition by force of the proviso, and a covenant by force of the other words." Co. Litt. 203 b.

But according to the authorities, including some of those above cited, and from the reason and sense of the thing, a covenant will not arise unless it can be collected from the whole instrument that there was an agreement, or promise, or engagement, upon the part of the person sought to be charged, for the performance or non-performance of some act. Comyns, in his Digest (Covenant, A, 2), says that "any words in a deed which show an agreement to do a thing, make a covenant." "But," says the same author, "where words do not amount to an agreement, covenant does not lie; as, if they are merely conditional to defeat the estate; as, a lease, provided and upon condition that the lessee collect and pay the rents of his other houses." Comyns, Dig., Covenant, A, 3. The language last quoted is found also in Platt's Treatise on the Law of Covenants. Law Library, vol. iii. p. 17. It there appears in connection with his reference to the case where A. leased to B. for years, on condition that he should acquit the lessor of ordinary and extraordinary charges, and should keep and leave the houses at the end of the term in as good plight as he found them. In such case, the author remarks, the lessee was held liable to an action for omitting to leave the houses in good plight, "for here an agreement was implied."

Applying these doctrines to the case before us, its solution is not difficult. Without stopping to consider whether a covenant upon the part of Finch could arise out of a bill of sale which he did not sign, but merely accepted from his vendor (Platt, Covenants, ch. 1), it is sufficient to say that the instrument contains no agreement or engagement or promise by him that he would or would not do anything. There is, in terms, a covenant by Hale to Finch to defend the title to the boat and its machinery against all persons whomsoever. This is immediately followed by language implying an agreement that the *sale* was upon the *express condition* that neither the boat nor its machinery should be used within a prescribed time upon certain waters. It is the case of a bare, naked condition, un-

accompanied by words implying an agreement, engagement, or promise by the vendee that he would personally perform, or become personally responsible for its performance. The vendee took the property subject to the right which the law reserved to the vendor, of recovering it upon breach of the condition specified. The vendee was willing, as the words in their natural and ordinary sense indicate, to risk the loss of the steamboat when such breach occurred, but not to incur the personal liability which would attach to a covenant or agreement upon his part, that he would not use, and should not permit others to use, the boat or its machinery upon the waters and within the period named. If this be not so, then every condition in a deed or other instrument, however bald that instrument might be of language implying an agreement, could be turned, by mere construction and against the apparent intention of the parties, into a covenant involving personal responsibility. The vendor having expressly, and the vendee impliedly, agreed that the sale was upon an express condition, — stated in such form as to preclude the idea of personal responsibility upon the part of the vendee, — we should give effect to their intention, thus distinctly declared.

This conclusion disposes of the case, and relieves us of the necessity of considering other questions of an interesting nature which counsel have discussed.

*Judgment affirmed.*