**E. I. DU PONT DE NEMOURS & CO. v. CLAIBORNE–RENO CO.***

No. 9610.

Circuit Court of Appeals, Eighth Circuit.

March 20, 1933.

Rehearing Denied April 25, 1933.

entered upon the verdict, the Du Pont Company has appealed.

The Reno Company had been, from the 23d day of October, 1924, until the 1st day of December, 1930, the sole distributor in the state of Iowa of certain products manufactured only by the Du Pont Company, and intended mainly for the finishing, refinishing, and polishing of automobiles. These products were referred to as Duco. The original contract between the parties, which was made in 1924, had been several times renewed, with slight variations, prior to October 1, 1927. On that date a contract substantially similar to those which preceded it was entered into. It was in the form of a letter prepared by the Du Pont Company and accepted by the Reno Company. We set it forth in full:

"September 1, 1927.
"Claiborne-Reno Co., 1023 Locust St., Des Moines, Iowa.

"Gentlemen: This will confirm our agreement whereby you will act as sole distributor of our Spray Duco, Spray Thinner, Blue Diamond Undercoats and Rubbing Compounds to automobile refinishing shops and furniture refinishing shops in the following territory, with the exception of such shops as we may find it necessary to serve direct because of their connection with manufacturing or industrial consumers of Duco materials.

"Entire State of Iowa.

"It is understood and agreed that this contract is entered into upon the following conditions:

"That it is our intention and desire to continue under this agreement so long as your services, in our judgment, prove satisfactory.

"That our object is to secure as rapidly as possible sufficient distribution of our Duco finish process to satisfactorily cover the territory in question among responsible refinishers who are in a position to provide adequate facilities to enable them to turn out first-class work.

"That the sale of our material or process will not be limited by being connected with the sale or use of any other material, apparatus or process in which you are or may become interested, such as air brush equipment, upholstery, materials, hardware, accessories, et cetera.

"That you will endeavor to have your customers refrain from the use of competitive products, and that under no circumstances will such products be used in your shop.

"That you will not use, teach or recom-

Willis J. O'Brien and John N. Hughes, both of Des Moines, Iowa (Hughes, O'Brien & Faville and J. M. Parsons, all of Des Moines, Iowa, and C. M. Spargo, of Wilmington, Del., on the brief), for appellant.

John L. Gillespie, of Des Moines, Iowa (Gillespie & Moody, of Des Moines, Iowa, on the brief), for appellee.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

SANBORN, Circuit Judge.

The parties will be referred to in this opinion as the Du Pont Company and the Reno Company.

The Du Pont Company brought suit against the Reno Company for $5,989.88, part of which was for goods sold and delivered, and part for a balance due upon a promissory note. The Reno Company admitted this indebtedness, but set up a counterclaim for $350,000 damages for breach of contract. The case was tried to a jury, which returned a verdict in favor of the Reno Company for $41,588.12. From the judgment

mend processes of application and finishing not approved by us.

"That you will not grant exclusive rights for the use of our Duco Finish or process to any refinisher in any given territory without our written approval. In this connection it is understood that we wish to avoid the granting of exclusive rights so far as possible, as our experience has shown that refinishers do more satisfactory work when they know they do not have a monopoly in the district they are serving.

"That you will provide satisfactory facilities for instruction and demonstration in the use and application of our materials, and process to your customers and furnish them with whatever service may be necessary to enable them to turn out first-class work. In those cases where you consider it necessary to make a charge for demonstration and instruction services it should not exceed the approximate cost to you, and in no cases should charges be made which may appear to be a premium or license fee for the use of our process or materials.

"That you will co-operate with us in formulating sales promotion plans by supplying statistical information that we may need from time to time.

"That we will furnish materials to automobile refinishing shops in your territory only on orders approved by you.

"That freight will be allowed on shipments to your warehouse, but that no freight will be allowed on shipments made by us direct to your customers.

"That all materials will be billed to you at current list prices with freight allowances as specified in preceding paragraph, and in consideration of your services under this agreement we will allow you a discount of 25 per cent.

"That your prices to your customers will not exceed our invoice list prices to you f. o. b. your city, plus an additional 10c per gallon on items sold by the gallon and 1c per pound on materials sold by the pound to cover your own warehouse and handling expense, except the following: On 244 Line Duco, 259 Line Duco, and 235 Line Duco you may add 25 cents per gallon to our invoice list price instead of 10c per gallon.

"That our invoices shall be rendered promptly after shipments are made and shall be payable on the following terms: Invoices dated 1st to 15th inclusive, less 1 per cent discount on last day of current month or net without discount on 15th of following month; invoices dated 16th to 31st inclusive, less 1 per cent discount on 15th of following month or net without discount on last day of following month.

"That no discount is to apply on drums which are charged extra and returnable for corresponding credit F. O. B. Parlin, if returned in good condition within four months from date of shipment.

"That this agreement does not include Duco and Thinner prepared for brush application.

"That this agreement cancels and replaces agreement dated January 1, 1927.

"Please signify your acceptance and approval of these conditions by signing and returning the enclosed duplicate of this letter within five days.

"Yours very truly,
"E. I. Du Pont de Nemours & Company, Chemical Products Division,
"H. E. Lackey, Director of Sales.
"ME:
"Accepted and Approved: Claiborne-Reno Company
"By M. M. Reno Sec. & Tr.
"Date Oct. 1st 27."

On October 27, 1930, the Du Pont Company gave notice to the Reno Company of the termination of the contract effective the December 1st following, and it was this termination by the Du Pont Company which the Reno Company asserts constituted a breach of the contract.

The Reno Company's cause of action, briefly stated, is this: That it had since 1924 acted as the sole distributor for Duco in the state of Iowa under the agreement in question and similar agreements; that it had developed the territory and created a demand for the Du Pont Company's products, had abandoned the sale of competitive products, had maintained facilities for instruction and demonstration in the use of and application of Duco, had expended large sums of money in furtherance of the Du Pont Company's interests, and had in all things carried out its obligations under the contract; that, under the terms of the contract, the Du Pont Company could not terminate it so long as the services of the Reno Company were, in the judgment of the Du Pont Company, satisfactory; that the termination of the contract was at a time when, in the judgment of the Du Pont Company, the services of the Reno Company were not unsatisfactory; that the Du Pont Company did not exercise good faith in terminating the agreement; and that the result of the refusal of the Du

Pont Company to continue was the destruction of the Reno Company's business.

The question whether the termination of the contract by the Du Pont Company was in good faith, as claimed by it, or in bad faith, as claimed by the Reno Company, was submitted to the jury, and determined adversely to the former. There had been a motion by the Du Pont Company for a directed verdict at the close of the evidence, and the failure of the court to direct a verdict in its favor is assigned as error.

The important question in this case is whether the termination of this contract by the Du Pont Company gave to the Reno Company a cause of action for damages. Reduced to its lowest terms, the claim of the Reno Company is that what it bargained for and received from the Du Pont Company was an agreement that it should be the sole distributor of Duco in the state of Iowa so long as the Du Pont Company was satisfied with its services and so long as it (the Reno Company) chose to perform the services; that the consideration for the promise on the part of the Du Pont Company was the promise of the Reno Company to act as sole distributor and to do the things which it was required to do under the agreement, and the performance of that promise. The Du Pont Company, on the other hand, claims that the contract was unenforceable because the Du Pont Company did not promise to continue until dissatisfied, and because of uncertainty of consideration and lack of mutuality of obligation; that it is a bilateral contract, depending for its consideration upon the mutual promises of the parties, and that, being terminable at will by the Reno Company, it was also terminable at will by the Du Pont Company; and that the question whether, in its judgment, the services of the Reno Company were satisfactory, is not a justiciable question.

There is much to be said in favor of requiring men to adhere strictly to their undertakings, whatever they may be, but there are certain established rules with reference to contracts which are not to be disregarded, no matter how great the hardship may be which grows out of an adherence to them. No doubt, the rule which requires mutuality of obligation with respect to contracts to be performed in the future, where the promise of one party constitutes the sole consideration for the promise of the other, arises from what is regarded by the courts as the inherent unfairness of enforcing a contract which requires performance by one of the parties, but leaves the other party free to accept or reject performance.

With some of the contentions of the Du Pont Company we cannot agree. It is urged that the language of the contract does not indicate a promise by the Du Pont Company to remain bound until dissatisfied with the services of the Reno Company; that all that is expressed is a mere desire and intention to continue the contract while satisfied.

The mere expression of an intention or desire is not a promise. "An intention is but the purpose a man forms in his own mind; a promise is an express undertaking, or agreement to carry the purpose into effect." Holt v. Akarman, 84 N. J. Law, 371, 86 A. 408, 409; Scott v. S. H. Kress & Co. (Tex. Civ. App.) 191 S. W. 714; 6 Words and Phrases. First Series, 5675; 1 Williston, Contracts (1920) § 26.

No special form of words, however, is necessary to create a promise. All that is necessary is that a fair interpretation of the words used shall make it appear that a promise was intended.

"It is undoubtedly true, as argued by counsel, that neither express words of covenant, nor any particular technical words, nor any special form of words, is necessary in order to charge a party with covenant." Hale v. Finch, 104 U. S. 261, 268, 26 L. Ed. 732; United States v. Oregon & C. R. Co. (C. C.) 186 F. 861, 905; 2 Williston, Contracts (1920) § 670; 13 Corpus Juris, 303, § 125.

The common or ordinary meaning of language will be applied to the words of a contract in the absence of anything to show that they were used in a different sense. E. H. Stanton Co. v. Rochester G. U. Agency (D. C.) 206 F. 978, 983; Hill v. Travelers' Insurance Co. of Hartford, Conn., 146 Iowa, 133, 135, 124 N. W. 898, 28 L. R. A. (N. S.) 742; 2 Williston, Contracts, § 618; 13 Corpus Juris, 531.

The writing must be construed as a whole, and all its provisions read together. O'Brien v. Miller, 168 U. S. 287, 298, 18 S. Ct. 140, 42 L. Ed. 469; Green County, Ky., v. Quinlan, 211 U. S. 582, 594, 29 S. Ct. 162, 53 L. Ed. 335; United States v. Ansonia Brass & Copper Co., 218 U. S. 452, 467, 31 S. Ct. 49, 54 L. Ed. 1107; Merrill-Ruckgaber Co. v. United States, 241 U. S. 387, 392, 36 S. Ct. 662, 60 L. Ed. 1058; Mutual Life Ins. Co. of N. Y. v. Kelly (C. C. A. 8) 114 F. 268, 278; Hearin v. Standard Life Ins. Co. (D. C.) 8 F.(2d) 202, 203; 2 Williston,

228

Contracts (1920) § 618; 13 Corpus. Juris, 525, and cases cited.

■ If possible, a court will give effect to all parts of an instrument, and a construction which gives a reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable. Canadian Northern Ry. Co. v. Northern Miss. Ry. Co. (C. C. A. 8) 209 F. 758, 761, 762; Rushing v. Manhattan Life Ins. Co. of N. Y. (C. C. A. 8) 224 F. 74, 76; Pillsbury Flour Mills Co. v. Great Northern Ry. Co. (C. C. A. 8) 25 F.(2d) 66, 69; 2 Williston, Contracts (1920) § 619; 13 Corpus Juris, 527, and cases cited.

■ A construction which renders the contract valid and its performance possible will be preferred to one which renders it void and its performance impossible or meaningless. Hobbs v. McLean, 117 U. S. 567, 576, 6 S. Ct. 870, 29 L. Ed. 940; Great Northern Ry. Co. v. Delmar Co., 283 U. S. 686, 691, 51 S. Ct. 579, 75 L. Ed. 1349. See Weil v. Neary, 278 U. S. 160, 167, 49 S. Ct. 144, 73 L. Ed. 243; Southwest Pipe Line Co. v. Empire Nat. Gas Co. (C. C. A. 8) 33 F.(2d) 248, 250, 64 A. L. R. 1229; Cole Motor Car Co. v. Hurst (C. C. A. 5) 228 F. 280; 282; Memphis Furn. Mfg. Co. v. Wemyss Furn. Co. (C. C. A. 6) 2 F.(2d) 428, 432; Cooper v. Northern Pacific Ry. Co. (D. C.) 212 F. 533, 536; 2 Williston, Contracts, § 620; 13 Corpus Juris, 539.

■ The language of a contract will be construed most strongly against the party preparing it. Texas & P. Ry. Co. v. Reiss, 183 U. S. 621, 626, 22 S. Ct. 253, 46 L. Ed. 358; Drainage Dist. No. 1 of Lincoln County, Neb., v. Rude (C. C. A. 8) 21 F.(2d) 257, 261; Sternberg v. Drainage Dist. No. 17 of Miss. County, Ark. (C. C. A. 8) 44 F.(2d) 560, 562; Marx v. American Malting Co. (C. C. A. 6) 169 F. 582, 584; Continental Oil Co. v. Fisher Oil Co. (C. C. A. 10) 55 F. (2d) 14, 16; Bijur Motor L. Co. v. Eclipse Mach. Co. (D. C.) 237 F. 89, 92; 2 Williston, Contracts (1920) § 621; 13 Corpus Juris, 544, 545.

■ Contracts are ordinarily to be performed by business men, and should be given the interpretation which would be placed upon them by the business world. Where one corporation presents to another corporation a form of agreement reciting, "It is understood and agreed that this contract is entered into upon the following conditions: That it is our intention and desire to continue under this agreement so long as your services, in our judgment, prove satisfactory," we have no doubt that such language would ordinarily be understood to mean a promise to continue until dissatisfied. See Horton v. Winbigler, 175 Cal. 149, 165 P. 423.

■ We do not agree with the contention of the Du Pont Company that there was such uncertainty with reference to the quantity of its products to be taken by the Reno Company as to make the contract void.

The following language from the opinion of this court in Marrinan Medical Supply, Inc., v. Ft. Dodge Serum Co. (C. C. A. 8) 47 F.(2d) 458, 462, is applicable:

"If the contract here in question were a pure contract of sale, the criticism of uncertainty would be formidable. But we have held that the contract is not purely one of sale. It partakes of the character not only of a sales contract, but also of a factorage contract, and perhaps also of a sales agency contract. In the two latter classes of contracts, uncertainty as to amount is inherent in their very nature. Where territory is to be exploited and orders to be solicited by salesmen, the number and amount of such orders cannot, of course, be foretold. They can be determined only by the potential demand of the territory and the diligence of the salesmen. Contracts of factorage or sales agency are not invalid for such uncertainty, and we hold that the present contract is not on that account invalid."

■ If there is uncertainty, lack of mutuality, or lack of consideration in the contract with which we are concerned, it arises out of the fact that the Reno Company was in a position at any time to terminate the contract without incurring any liability therefor. Had the contract been one for a definite term, it might have been sustained upon the authority of Marrinan Medical Supply, Inc., v. Ft. Dodge Serum Co., supra. The only substantial difference between the contract involved in that case and this contract was that the former was to continue for a definite period, and both parties were bound by it during that period. It is placing an unnatural construction upon this contract to hold that the promises made by the Reno Company and their performance constituted the consideration for the Du Pont Company remaining bound so long as it was satisfied, and that its promise in that regard was bought and paid for. The contract itself provides that the consideration for the services of the Reno Company is the discount of 25 per cent. upon all materials ordered from the Du Pont Company. The agreement was nothing more

than a sales agency agreement, terminable at will by the Reno Company, but containing a promise of the Du Pont Company to continue so long as satisfied with the services of its distributor. For that reason, it is not controlled by Conley Camera Co. v. Multiscope & Film Co. (C. C. A. 8) 216 F. 892, which involved a contract containing a promise of the Camera Company to sell cameras for an indefinite period to the Multiscope Company in consideration of the payment of $500 and an order for $9,000 worth of photographic wooden ware. We quote from the decision (pages 895 and 896 of 216 F.):

"It is also insisted that judgment should have been rendered in its favor on the pleadings, because the contract is void for want of mutuality, and that there is no definite time within which it is to be performed. It is true that an executory contract without any express consideration passing to the party who undertakes to sell certain property or perform certain services, when there is no corresponding obligation on the other party, will be void for want of mutuality. But this rule does not apply when there is a valuable consideration paid by the one party to the other party who obligates himself to do a certain thing. [Citing Joy v. St. Louis, 138 U. S. 1, 11 S. Ct. 243, 34 L. Ed. 843.] * * *

"Option contracts, whereby a party obligates himself, for a valuable consideration, to convey certain property, are of everyday occurrence. In none of them is there any obligation on the part of the would-be purchaser to make the purchase, that being discretionary with the party to buy. But the obligor, having received a valuable consideration, cannot be heard to defeat the contract because the obligations are not mutual, as is the case where the sole consideration is a promise for a promise."

There are cases perhaps indicating that contracts like the one in question here are not void for uncertainty of consideration or lack of mutuality of obligation. Abrams v. George E. Keith Co. (C. C. A. 3) 30 F.(2d) 90; Coca-Cola Bottling Co. v. Coca-Cola Co. (D. C.) 269 F. 796.

There are, however, cases in this and other circuits which indicate that the termination of such a contract does not give rise to a cause of action:

A. Santaella & Co. v. Otto F. Lange Co. (C. C. A. 8) 155 F. 719. This was a suit upon a promissory note and upon an account for goods sold and delivered. The answer admitted the debt and set up a counterclaim for damages in the sum of $30,000 resulting from an alleged breach of contract and the failure and refusal to ship cigars as required. The jury returned a verdict in favor of the defendant. Santaella & Co. had entered into a contract with the Lange Company whereby the latter was to have the exclusive right to sell a certain brand of cigars in a certain territory during the life of the brand or as long as the Lange Company cared to sell them. The court said (page 721 of 155 F.):

"The controlling question for determination is: Did the defendants have an enforceable contract with the plaintiff? It must be conceded that, if the defendants had such a contract, it was essential to its validity that it should have been mutually obligatory upon both parties. If the defendants could compel the plaintiff to ship cigars, the plaintiff ought to be in a position to compel the defendants to take. Were the defendants under any obligation to send in orders within any particular time, or for any specified quantity or quality of cigars? The allegations of the counterclaim and the version given in the agreement in the testimony of Otto F. Lange answer these questions. It was entirely at the option of the defendants, dependent upon the conditions of their business and trade, as to whether they would send in any orders at all. From any cause, such as depression in business, or other more desirable arrangements, or a desire to get out of that line of trade, the defendants were at liberty to cease at any time to send orders to the plaintiff, without liability for breach of contract."

The court held that the case was ruled by Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co. (C. C. A. 8) 114 F. 77, 57 L. R. A. 696. On petition for rehearing, the court said (page 725 of 155 F.):

"In support of the motion for rehearing counsel have extensively gone into a review of the case in the attempt to show that the opinion of the court improperly held that the contract in question was unilateral, placing much stress upon the contention that the testimony of Mr. Lange tended to show that a part of his undertaking under the arrangement between the parties was that he should, by his experience and labor, extend the field for the sale of the cigars to be furnished by the plaintiff in error, thereby creating a larger market for them, and that he performed in this respect his undertaking. Let it be so conceded. But how does this obviate the stubborn fact that whether or not he would maintain that field and demand, occupy or abandon it, or cease, ad libitum, to send in

any orders, or betake himself to some other field of operation and employment, were wholly optional on the part of the defendant in error? The plaintiff in error, on such election by its purchaser, was without remedy. It could not compel the proposed purchaser to want any cigars. It could not ship a box of cigars, except as ordered by the purchaser. As shown in the opinion, both parties so recognized the situation and acted upon it when the defendant in error directed that the orders already in be not filled. That such a contract is one-sided, wanting in that mutuality essential to its enforcement, is settled in this jurisdiction."

Velie Motor Car Co. v. Kopmeier Motor Car Co. (C. C. A. 7) 194 F. 324. By a written contract, the plaintiff, an automobile manufacturer, purported to grant to the defendant for one year the exclusive right to sell its machines within certain territory, and agreed that they should be invoiced to the defendant at stated prices. The contract required the defendant to deposit $1,000, to order at least fifteen machines during the year, to sell under a guaranty for a year, to maintain a repair shop, and to keep at least one machine in stock for exhibition. The plaintiff did not obligate itself to sell to the defendant any machines, and reserved the right to return the deposit and cancel the contract at any time. The plaintiff sued for a breach of this contract. The court said (page 330 of 194 F.):

"Unless the defendant received a consideration for its undertakings by being given the exclusive right to sell within the given territory, the contract lacks mutuality. But it will be seen that such right, if any, was made subject to plaintiff's right to arbitrarily, and without assigning any cause, cancel the contract. Defendant might well decline to go to the expense and trouble of advertising and developing the territory named, when its rights might at any time, be terminated.

"Whatever construction should be given to the contract, whether it be one of sale or of agency, while it remains executory there must be mutuality. Attel v. Bartholomew, 69 Wis. 43, 33 N. W. 110, 5 Am. St. Rep. 103; Lowber v. Connit, 36 Wis. 183."

Oakland Motor Co. v. Indiana Automobile Co. (C. C. A. 7) 201 F. 499. This case involved an agreement between a manufacturer of automobiles and a dealer. The contract gave the dealer, for the term of one year, the exclusive right to sell its cars in a certain territory at a stated discount from list price, with a provision that no order should be binding unless submitted in writing and accepted by the manufacturer at least thirty days prior to the date for delivery. It further provided that it might be canceled by either party for just cause on thirty days' written notice. Another provision gave the right to cancel for a violation without notice. A supplemental clause bound the dealer to purchase fifty cars during the term of the contract and as many more as it could handle and the manufacturer could supply. The manufacturer gave notice of cancellation, and the dealer brought an action for damages. The court said, with reference to the clause relating to cancellation (page 504 of 201 F.):

"In reference to clause 12 it is frankly conceded in the brief on behalf of plaintiff 'that a contract for future delivery of personal property, which confers upon either party the arbitrary right of cancellation prior to the delivery, would be lacking in mutuality,' pursuant to the ruling of this court in the recent case of Velie Motor Car Co. v. Kopmeier Motor Car Co., 194 F. 324, 114 C. C. A. 284; but the contention is that the instant provision, to be 'canceled for just cause by either party,' does not fall within such rule, as it implies 'a rightful or lawful cause.' We believe use of the terms 'for just cause' to be insufficient to exempt the contract from the rule applied in the above-mentioned case, as no means are furnished to ascertain what may have been the particular cause or causes thereby intended by both parties. That it did not mean violations of the contract terms appears from clause 14, which provides for termination for such cause 'without the notice prescribed' in the above provision. In Cummer v. Butts, 40 Mich. 322, 325, 29 Am. Rep. 530, like agreement for terminating the contract 'for good cause,' was held to afford no 'common and intelligible criterion for the parties, or any determinate sense whatever' as to the cause, so that no breach was committed in terminating the contract. See 1. Benjamin on Sales (4 Am. Ed.) § 51 and note; 1 Beach on Mod. Law of Contracts, §§ 72, 76."

Woerheide v. Barber Asphalt Paving Co. (C. C. A. 8) 251 F. 196. This was an action to cancel certain contracts whereby the plaintiff gave to the defendant, a manufacturer of composition roofing, the exclusive right to use and sell patented cleats for such roofing during the life of the patent. With reference to the terms of the agreements involved, the court said (page 203 of 251 F.):

"Treating the three agreements as one final agreement, a summary of the obligations of appellee thereunder is as follows: To feature and offer to the trade the two cleats (Kant-Leak with all of its high-grade roofing, and Kontinuous with a popular grade roofing) during the life of the patents; to include favorable references to both cleats in its current advertising of roofing material, and to advocate their use and sale in such periodicals as might seem advisable to appellee, such advertising and advocacy to continue during a substantial demand for the cleats, to the extent determined by the sound judgment of appellee; to pack Kant-Leak Kleets with all high-grade roofing, except where the customers might demand old-style fastenings; to maintain price of high-grade roofing so packed to within 5 cents per square of price with old-style fastenings; to purchase 150,000 sets (kind not specified) in last half of 1914 at monthly rate of 25,000 sets, delivered at Maurer, N. J., or Madison, Ill. (as ordered by appellee), at 20 cents per set for Kant-Leak Kleets and 17 cents for Kontinuous Kleets. Of these obligations, which are so uncertain or indefinite that they cannot be determined and enforced? The requirements to feature and offer the cleats to the trade are definite as to duration but uncontrolled as to manner or extent. The requirement to advertise and advocate their use is left undefined as to extent. The requirement to pack Kant-Leak Kleets with all high-grade roofing except where customer demands old-style is definite in the sense that it is an application to an established business (sale of high-grade roofing with fastenings), the limits of which can be ascertained. The requirement as to maintenance of high-grade roofing price is definite. The requirement as to purchase of 150,000 sets in 1914 may have been indefinite in its terms, but it was performed in all substantial respects before any attempted rescission, and therefore must be regarded as definite. There is no requirement that appellee purchase any Kontinuous Kleets after 1914.

"The contract was for the life of the patents, which would have continued, after the attack upon the contract, for about 11 years on the Kant-Leak Kleet and about 17 on the Kontinuous Kleet."

The court held that the defendant had substantially performed a part of the contract, and said (page 204 of 251 F.):

"Although appellee's performance of this part of the contract must be regarded as substantially complete, yet complete performance of only one of its five or six important executory contract obligations cannot prevent the avoidance of the contract, if others equally important remain executory and are legally uncertain. Santaella v. Lange, 155 F. 719, 84 C. C. A. 145; Cold Blast Trans. Co. v. Kansas City Bolt & Nut Co., 114 F. 77, 52 C. C. A. 25, 57 L. R. A. 696; Oakland Motor Co. v. Indiana Automobile Co., 201 F. 499, 121 C. C. A. 319; Velie v. Kopmeier, 194 F. 324, 114 C. C. A. 284; Hudson v. Browning, 264 Mo. 58, 174 S. W. 393; Higbie v. Rust, 211 Ill. 333, 71 N. E. 1010, 103 Am. St. Rep. 204; Killebrew v. Murray, 151 Ky. 345, 151 S. W. 662; Hopkins v. Iron Co., 137 Wis. 583, 119 N. W. 301. That every part of the consideration be definite or every part be indefinite is not the gauge of the validity of a contract. However, the law requires that the important, essential elements in the consideration be ascertainable with reasonable certainty. This is true because the law will not hold a party bound to a contract against his will, when the substance of what he is to get in return is executory, and is so shadowy in its outline that the other party can refuse to perform with impunity, since either the contract does not compel it, or no court can say what damage it has caused if it fail to act."

The court further said:

"The evidence convinces that there has been substantial performance of the contract by both parties up to the date of attempted avoidance. The entire trouble is found in the contract itself. It was not at its making strong enough to hold, and it had not, through performance, become so up to the time appellants saw fit to withdraw therefrom."

Huffman v. Paige-Detroit Motor Car Co. (C. C. A. 8) 262 F. 116. This was an action for damages by a dealer against an automobile manufacturer. By the terms of the contract there in question, the manufacturer granted to the dealer the exclusive right to sell Paige automobiles in Nebraska and parts of Iowa and South Dakota. The contract was (page 117 of 262 F.) "much like one of agency. * * * The defendant [manufacturer] did not obligate itself to sell, nor plaintiff to buy, any specified quantity of automobiles, nor was a determinable quantity fixed in a mutually binding way by the requirements of an established business. The defendant was expressly exempted from such an obligation and from adherence to the schedule of prices and discounts set forth. It was free to decline shipments under the contract, and also free to fix and change prices at will. The contract specified a time when

it expired by limitation." With reference to the right to terminate, the court said (page 118 of 262 F.):

"But aside from the provisions above noted, indicating a lack of mutuality of obligation, the contract expressly reserved to defendant the right of cancellation when in its opinion the plaintiff was not working the territory to the best advantage. By another clause it was provided that, if the defendant 'believes that the dealer (the plaintiff) is not properly and diligently pushing the sale of its cars, it hereby reserves the right at its election, and without making itself liable in any manner for any claim or action for damages, * * * to cancel and terminate this agreement. * * *' It is quite manifest that the contract merely furnished a basis for future dealings to be observed no longer than was mutually satisfactory. There was no hard and fast commitment of either party, if he chose to break away. Oakland Motor Car Co. v. Indiana Automobile Co., 121 C. C. A. 319, 201 F. 499; Velie Motor Car Co. v. Kopmeier Motor Car Co., 114 C. C. A. 284, 194 F. 324."

Miami Coca-Cola Bottling Co. v. Orange Crush Co. (C. C. A. 5) 296 F. 693. The appellant sought to enjoin the cancellation by appellee of a contract and to compel specific performance. The contract was in the form of a license granting to appellant the exclusive right, within a designated territory, to manufacture "orange crush" and to bottle and distribute it under appellee's trade-mark. The appellee agreed to supply its concentrate to be used in the manufacture of orange crush at stated prices, and to do certain advertising. The appellant agreed to purchase a specified quantity of the concentrate, to maintain a bottling plant, to solicit orders, and to undertake to promote the sale of orange crush and to develop an increase in the volume of sales. The license granted was perpetual, but contained a proviso to the effect that the appellant might at any time cancel the contract. The bill alleged that the appellant bought a quantity of concentrate, manufactured orange crush, and was engaged in the performance of its obligations, when, about a year after the contract was entered into, the appellee gave written notice that it would no longer be bound. The court said (page 694 of 296 F.):

"We agree with the District Judge that the contract was void for lack of mutuality. It may be conceded that the appellee is liable to the appellant for damages for the period during which the contract was performed; but for such damages the appellant has an adequate remedy at law. So far, however, as the contract remains executory, it is not binding, since it can be terminated at the will of one of the parties to it. The consideration was a promise for a promise. But the appellant did not promise to do anything, and could at any time cancel the contract. According to the great weight of authority such a contract is unenforceable. Marble Co. v. Ripley, 10 Wall. 339, 359, 19 L. Ed. 955; Willard Sutherland & Co. v. United States, 262 U. S. 489, 43 S. Ct. 592, 67 L. Ed. 1086; Velie Motor Car Co. v. Kopmeier Motor Car Co., 194 F. 324, 114 C. C. A. 284; McCaffrey v. Knight (D. C.) 282 F. 334; Fowler Utilities Co. v. Gray, 168 Ind. 1, 79 N. E. 897, 7 L. R. A. (N. S.) 726, 120 Am. St. Rep. 344; 6 R. C. L. 691; 1 Williston, pp. 219, 222. The contract cannot be upheld upon the theory that the appellant had a continuing option, because an option to be valid must be supported by a consideration. 6 R. C. L. 687.

"In Express Co. v. Railroad Co., 99 U. S. 191, it is said, at page 200 (25 L. Ed. 319): 'A court of equity never interferes where the power of revocation exists.' The reason given is that it is within the power of one of the parties to render the action of the court a nullity."

While it is true that in the contract under consideration there is no specific provision that the Reno Company could terminate the contract at will, we regard this fact as immaterial, and we interpret the contract as allowing it so to do. Moore v. Security Trust & Life Ins. Co. (C. C. A. 8) 168 F. 496, 499, certiorari denied 219 U. S. 583, 31 S. Ct. 469, 55 L. Ed. 346; Willcox & Gibbs Sewing-Machine Co. v. Ewing, 141 U. S. 627, 12 S. Ct. 94, 35 L. Ed. 882; Victor Talking Machine Co. v. Lucker, 128 Minn. 171, 150 N. W. 790; 32 A. L. R. 232.

We gather, from the cases in this and other circuits to which we have referred that, where a contract is so lacking in mutuality of obligation or certainty of consideration that it may be canceled, as in the Woerheide Case, or that specific performance will be denied on that sole ground, as in the Miami Coca-Cola Bottling Co. Case, its termination by either party creates no liability for damages resulting from a refusal to carry on.

The contract here is such that, because of the uncertainty of continued performance by the Reno Company, a court of equity would, upon that ground alone, refuse specific performance. Had the Du Pont Com-

pany brought a suit in equity to cancel the contract, upon the authority of the Woerheide Case, it would have been canceled for uncertainty of consideration. Our conclusion, therefore, is that, whether the termination by the Du Pont Company was in good faith or bad faith, no action for damages could be based upon it.

We have much sympathy with the theory upon which the case was disposed of in the court below. It seems fair that, after having spent six years in developing the territory assigned to it, the Reno Company should have been permitted to continue or should have been compensated for the injury done it by having its business taken away. However, the injury done to the Reno Company was one against which its contract, rather obviously, did not afford protection. As was said by Judge Stone in the Woerheide Case (page 204 of 251 F.) : "The entire trouble is found in the contract itself. It was not at its making strong enough to hold. * * *"

"The fact that the promisee relies on the promise to his injury, or the promisor gains some advantage therefrom, does not establish consideration without the element of bargain or agreed exchange." Restatement of the Law of Contracts of the American Law Institute, vol. 1, § 75, Comment c.

It is unnecessary to consider other questions presented.

The judgment is reversed, and the case remanded for further proceedings not inconsistent with this opinion.