**PEOPLES SAV. BANK OF GRAND HAVEN, MICH., v. AMERICAN SURETY CO. OF NEW YORK.**

No. 3736.

District Court, W. D. Michigan, S. D.
July 6, 1936.

---

· Leo C. Lillie, of Grand Haven, Mich., for plaintiff.

Mason, Davidson & Mansfield, of Detroit, Mich., and Alexander, McCaslin & Cholette, of Grand Rapids, Mich., for defendant.

RAYMOND, District Judge.

The agreed statement of facts upon which this case is submitted makes unnecessary any extended recital. The issue involves the right of plaintiff to recover upon a so-called "banker's blanket bond" dated December 5, 1931, a copy of which is attached to the declaration. By its terms defendant agreed to indemnify plaintiff against direct loss. through robbery of money or securities held by the insured as bailee, trustee, or agent. "Securities" are defined in the bond to mean "money orders (express, postal, pension, bank), bonds, debentures, scrip, warrants, *checks,* coupons, drafts (demand and time), bills of exchange, acceptances, promissory notes, certificates of ·deposit, certificates of stock, warehouse receipts, bills of lading, and all other instruments of a negotiable character, as respects ·which, if ̈negotiated, the In-·· sured would have no recourse against an innocent holder."

On August 18, 1933, a robbery of the Peoples·Savings Bank took place, and $2,-930 of unissued ̈Mellon National Bank travelers' cheques were stolen. Of these, $2,780 in face value were later cashed in various states and in Ontario, Quebec, and England. So far as shown, $150 worth are still outstanding. At the time of the receipt of these and other cheques from the Mellon National Bank in 1931, plaintiff executed a trust receipt which contained the following provision: "We ·further agree to return to said Mellon National Bank, when called upon so to do, any of these cheques remaining in our hands, and should any of them be lost, stolen or surreptitiously put into circulation while in our possession, we agree to account for them in the same manner as if they had been regularly issued by us; and notice to said bank of such loss or theft, or notice to stop payment of such cheques, shall not be a bar to or prevent said bank from paying same when presented."

Following the robbery, plaintiff promptly reported the theft both to the defendant and to the Mellon National Bank. Subsequent to payment of a portion of the stolen cheques, the Mellon National Bank commenced suit against plaintiff in the Ottawa Circuit Court and there recovered judgment for the full amount of the cheques stolen (including those not yet presented for payment), with interest thereon from the date of the robbery. In this suit, plaintiff seeks to recover the amount so paid with costs of suit and attorneys' fees incurred in the defense of the suit brought against it by the Mellon National Bank. Defendant denies liability upon the grounds: First, that there was no direct loss through robbery, for the reason that a considerable time after the robbery occurred, independent crimes in other states or countries intervened which resulted in the cheques being fraudulently presented to the Mellon Bank for payment; second, that the loss was not a direct loss because of the payment of the cheques by the Mellon Bank without legal obligation to pay them; and, third, that the plaintiff bank voluntarily agreed by virtue of the trust receipt to assume a liability which did not otherwise legally exist.

Defendant also claims that the uncompleted travelers' cheques which were stolen were not "securities" within the meaning of that word as defined in the bond of indemnity. It further claims that the loss to the plaintiff occurred either directly or indirectly through forgery, and that it is therefore not liable because of the proyision of section 7 of the bond, which provides in part that the bond does not cover any loss resulting directly or indirectly from forgery.

The question is primarily one of construction of the bond of indemnity, and the court must determine whether such loss as plaintiff has sustained through the robbery is within its protection.

Unquestionably the peculiar value of travelers' cheques is the facility with which they are cashed by merchants and bankers in all parts of the world without identification of the person presenting them and with no other protection against theft, fraud, or forgery than that afforded by identity of the signature placed upon the cheque at the time of its purchase with that made at the time of presentation for payment. Without this peculiar attribute, marketability of the cheques would be so seriously affected as to render them of little value. Their salability depends upon public confidence that they will surely be paid. Because of this, there has arisen the well-established practice on the part of the issuing bank or express company to pay the cheques even after notice or knowledge of loss, theft, or robbery. It is doubtless because of this common practice that the trust receipt in evidence provides for reimbursement to the Mellon National Bank in event of loss or theft notwithstanding notice thereof before payment. The essential value and purpose of a traveler's cheque is that it is a cashier's cheque payable by a bank or other corporation of unquestioned financial standing and integrity which is placed by the issuing bank in the hands of agent banks for delivery to any person who will pay the face value plus a small premium. It is payable to such individuals without identification and merely upon corresponding signatures. They are freely accepted not only by banks but in remote rural communities. That they are cheques which are intended to be and are freely negotiable cannot be gainsaid. Refusal of payment by the issuing bank or trust company because of defenses ordinarily available would be practically destructive of the entire business of placing such cheques in circulation. The special attributes and functions of these cheques have long been recognized. See Samberg v. American Express Co., 136 Mich. 639, 99 N.W. 879; American Express Co. v. City National Bank of Galveston (Tex.Civ. App.) 7 S.W.(2d) 886. In the present case, both parties to the bond must be considered to have had full knowledge of these attributes at the time of its execution. It has been stipulated that at the time of the execution of the bond defendant had knowledge that the plaintiff was the agent bank for Mellon National Bank and was handling its travelers' cheques under the trust receipt herein referred to.

Principles applicable to the construction of contracts are fully set forth in the following cases: E. I. Du Pont De Nemours & Co. v. Claiborne-Reno Co. (C.C. A.) 64 F.(2d) 224, 227, 89 A.L.R. 238; Gulf Refining Co. v. Home Indemnity Co. of New York (C.C.A.) 78 F.(2d) 842; O'Connor v. Great Lakes Pipe Line Co. (C. C.A.) 63 F.(2d) 523; Corbett v. Winston Elkhorn Coal Co., 296 F. 577 (C.C.A. 6). One of the cardinal principles here applicable is that the court must, if possible, ascertain the mutual intention of the parties from the language of the contract and the facts and circumstances attending its making, and that the meaning to be given a word or term is dependent upon the circumstances in which it is used. In the Gulf Refining Case, supra, 78 F.(2d) 842, at page 844, it was said: "It is an old rule of contract construction that language must, if ambiguous, be construed against him who uses it because it is a natural inference that the user would make plain what is in his favor. It is really an application of this general rule to contracts of insurance which has given rise to the statements thereof as to insurance contracts. The reason for the rule is that insurance contracts are nearly always carefully prepared by the insurers and the language therein is their careful selection." See, also, Ocean Accident & Guarantee Corporation v. Old National Bank (C.C.A. 6) 4 F.(2d) 753. In the Du Pont Case, supra, 64 F.(2d) 224, at page 228, 89 A.L.R. 238, is found the following statement: "Contracts are ordinarily to be performed by business men, and should be given the interpretation which would be placed upon them by the business world."

If exception from liability for loss of travelers' cheques were intended, such intention was capable of clear and explicit statement in the exclusion paragraph. To include in broad and general language such obligations and then to exclude in obscure and uncertain language opens the door for application of the rules of construction already referred to. Travelers' cheques are neither so novel nor so unusual as to be readily overlooked in contracts indemnifying banks against loss or theft of assets or property in their possession. Implied ex-

914

clusion by words of uncertain application must fail.

■ Defendant contends with plausibility. that no loss occurred until payment by the Mellon Bank subsequent to a series of forgeries of the various travelers' cheques and the payment of the loss by plaintiff in accordance with its trust receipt, and that hence there was no direct loss by robbery, and that the case is clearly within the exclusion paragraph of the bond which precludes liability for loss resulting directly or indirectly from forgery.

Because of the accepted practice in payment of stolen travelers' cheques and defendant's familiarity with the trust receipt here involved, the court is of opinion that a fair construction of the bond in question is that it was or should have been recognized by both of the parties thereto that liability and loss would inevitably result to plaintiff in event of a bank robbery in which these cheques were stolen. The trust receipt placed upon plaintiff absolute liability after demand by Mellon National Bank in event the cheques were stolen. The necessary conclusion is that the parties to this suit contracted with this liability and possible loss in mind. In the circumstances, the conclusion is inescapable that the loss, so far as plaintiff was concerned, occurred when the robbery took place. The subsequent completion by duplicate signatures, payment by the Mellon Bank, and the repayment by plaintiff were but necessary and inevitable incidents and consequences of the trust receipt under which the cheques were delivered, and the later robbery. Both the completion and the subsequent payment of stolen travelers' cheques were readily foreseeable by the parties to the bond as the result of any robbery in which the travelers' cheques were stolen. What defendant labels as independent intervening causes were in fact direct consequences.

■ From the foregoing it follows that the plaintiff is entitled to recover the amount of the cheques stolen with interest at 5 per cent. from the date of the robbery. No recovery will be allowed for costs or expenses of defending the suit in the Ottawa Circuit Court, it being the judgment of the court that the bond does not contemplate indemnity against expenses of such a suit.

Accordingly, judgment will be entered in favor of plaintiff and against the defendant in the sum of $3,352.41.