**CITY OF HARLAN, IOWA,**
Appellant,

v.

**DUNCAN PARKING METER CORPO-
RATION, Appellee.**

**No. 15421.**

United States Court of Appeals
Eighth Circuit.

April 10, 1956.

Raymond A. Smith, Council Bluffs, Iowa, and R. E. Hines, Harlan, Iowa (A. H. Savereide, Harlan, Iowa, on the brief), for appellant.

Joe W. Turner, Avoca, Iowa, for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and VAN OOSTER-HOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by the City of Harlan, hereinafter called City, defendant below, from a judgment in favor of the plaintiff, Duncan Parking Meter Corporation, hereinafter called Duncan, for the unpaid balance of the purchase price of parking meters. The case was tried by the court without a jury. The facts are stipulated and undisputed.

The City on December 18, 1951, entered into a written trial lease agreement with Duncan under which the City

leased certain parking meters from Duncan with the agreement that when the rentals paid equalled the agreed value of the meters the meters belonged to the City. Duncan completed installing the meters on March 31, 1952. The City approved the installation on the next day. A parking meter ordinance was enacted by the City on April 29, 1952, which ordinance became effective by publication on May 6, 1952.[1] On June 3, 1953, the City notified Duncan by registered letter of its intention to terminate the lease. The termination provision of the lease reads that the Company agrees: "To permit the City to terminate this lease after a trial period of Twelve (12) months of *actual operation* of the meters upon written notice given by the City to the Company at 835 North Wood Street, Chicago 22, Illinois, or at such other address as may hereafter be designated in writing by the Company, during the thirty (30) day period following the expiration of said trial period. The Company will, after receipt of such notice, at its own expense, remove the meters and repair any damage caused by such removal. Time is of the essence of the provisions of this paragraph." (Emphasis supplied.)

The City's principal defense is that it terminated the lease pursuant to the above-quoted termination clause. Duncan asserts that the termination was not timely, contending that the period of actual operation contemplated by the termination clause commenced on the date the installation of the meters was completed, to wit March 31, 1952. No objection is made to the form or manner of giving the notice of termination.

The City contends that the actual operation of the meters could not commence before May 6, 1952, the effective date of the parking meter ordinance. If the City can establish this contention, it has a complete defense to Duncan's present suit as notice of termination was given on June 3, 1953, which, on the basis of the City's interpretation, would be within the thirty day period immediately following the one year trial period. Thus, the decisive question to be determined is the time of commencement of the trial period. This turns on the meaning of the words "actual operation" as used in the termination clause of the contract.

The words "actual" and "operation" are common and well understood words. We do not believe that it can fairly be said that by the use of the words "actual operation" the parties clearly manifested an intent that the trial period should begin when the installation was complete and the meters mechanically operable. If we concede that Duncan's contention as to the construction of the termination clause is a possible construction, we can not deny that the provision in question is reasonably and fairly susceptible of the construction placed upon it by the City. The contract being ambiguous, resort must then be had to established rules for the construction of contracts.

■■ The primary rule for the construction of contracts is that the court must if possible ascertain and give effect to the mutual intention of the parties. A contract must be construed as a whole, and the intention of the parties is to be collected from the entire instrument.

1. The provisions of the act relative to the publication of ordinances, applicable at the time the parking meter ordinance was enacted, are found in Chapter 148 of the Laws of the Fifty-Fourth General Assembly of Iowa. Said act after providing that ordinances should be published in a newspaper of general circulation in the city provides, "Ordinances and revisions or amendments thereof shall take effect on the date of publication or at a subsequent date provided by the coun-

cil." See § 366.7, Iowa Code Annotated. The rule in Iowa and generally is that an ordinance is not effective until published as required by law. City of Des Moines v. Miller, 219 Iowa 632, 259 N.W. 205; State ex rel. Bump v. Omaha & Council Bluffs Railroad & Bridge Co., 113 Iowa 30, 84 N.W. 983, 52 L.R.A. 315; 62 C.J.S. Municipal Corporation, § 427, p. 816; 37 Am.Jur. 763, Municipal Corporations, § 151.

Individual words and phrases must be considered in connection with the rest of the contract. E. I. DuPont De Nemours & Co. v. Claiborne-Reno Co., 8 Cir., 64 F.2d 224, 227–228, 89 A.L.R. 238; United States v. Hillcrest Investment Co., 8 Cir., 147 F.2d 194, 197; 17 C.J.S., Contracts, § 297, p. 707.

■ Contracts should be construed in the light of the circumstances surrounding the parties at the time of the execution of the contract. Bricknell v. St. Joseph Stock Yards Bank, 8 Cir., 81 F. 2d 471, 473; Mercantile Home Bank & Trust Co. v. United States, 8 Cir., 96 F.2d 655; 17 C.J.S., Contracts, § 321, p. 744.

What was the purpose of the trial agreement as contemplated by the parties to the contract? It seems reasonably clear that Duncan desired to have the City give the meters a fair trial for a full year before the thirty day period in which the lease could be terminated would commence. The lease required that 50 per cent of the meter collections be paid to Duncan. From Duncan's standpoint this would assure it of some substantial revenue for furnishing and installing the meters. In the period of slightly over a year that the meters were in operation Duncan was paid as its 50 per cent share of the collections $5,016.47, nearly one-half of the agreed value of the meters which was $10,800. From the City's standpoint the trial period would give the City a fair opportunity to determine the public reaction to the meters, their effectiveness in regulating parking, and their revenue producing possibilities.

It is obvious that no fair or proper trial could be made of the meters without the support of a valid parking meter ordinance. This circumstance was recognized by the parties in section 15 of the lease, wherein the City agrees, "Until the agreed value is paid or this lease is terminated under paragraphs seven (7) or sixteen (16), to enact, maintain and enforce appropriate ordinances relating to the installation, maintenance and operation of these meters

and relating to vehicles parking next to them."

The evidence establishes that in the period from March 31 to May 12, 1952, the period between the installation of the meters and the commencement of enforcement of the parking meter ordinance, the meter collections amounted to $52.43, or less than $10 per week. During this period the meters were mechanically capable of operating. However, the public was advised by the press and otherwise that the meter ordinance would not be enforced until May 12, 1952, and consequently only a relatively few of the patrons using the parking facilities placed coins in the meters. In contrast, based on the 50 per cent of the meter collections paid Duncan, it would appear that the meter collections during the period the ordinance was enforced averaged nearly $200 per week. The substantial difference in results in the meter collections before and after the effective date of the ordinance clearly demonstrates the impossibility of giving the meters a fair trial without an effective ordinance.

■ The word "operation" is modified by the word "actual." We are convinced that the parties by their contract, construed as a whole, and in the light of the surrounding circumstances, contemplated that before "actual operation" commenced it was a prerequisite that a valid supporting ordinance be enacted.

■ The lease is drawn on a printed form provided by Duncan, entitled "Duncan Parking Meter Corporation Trial Lease Agreement." Most of its contents are printed. The factual situation here would warrant the application of the rule that in interpreting an ambiguous contract it will be construed most strongly against the party preparing it or employing the words concerning which doubt arises. E. I. DuPont De Nemours & Co. v. Claiborne-Reno Co., supra, 64 F.2d at page 228; Pazawich v. Johnson, 241 Iowa 10, 39 N.W.2d 590, 592; 17 C.J.S., Contracts, § 324, p. 751.

Duncan now complains about the delay by the City in enacting the ordinance and contends that the City can not now claim advantage of its delay to the detriment of Duncan. The provision of the contract obligating the City to enact the ordinance is hereinabove quoted. The lease sets no specific time for the enactment of the ordinance. Prior to the City's efforts to terminate the lease Duncan made no complaint about the relatively short delay in the passing of the ordinance. Paragraph 10 of the lease required the payment of rentals to commence thirty days after installation, and under such provision the first rental payment would have fallen due on May 1. The parties have stipulated:

"That the first payment to the plaintiff by the City of Harlan, Iowa, was the sum of $400.00 mailed on June 3, 1952, and no demand for payment was made by the plaintiff prior thereto."

Moreover, we feel that a complete answer to Duncan's contention is that Duncan in the present action is not seeking damages for the delay in passing the ordinance. We have serious doubt whether the delay of approximately a month in passing the ordinance was an unreasonable delay, but in any event the passing of the ordinance occurred long after the execution of the lease contract, and we can not see how the delay in passing the ordinance can have any possible bearing upon the interpretation and construction of the lease agreement.

We conclude that the actual operation of the meters did not commence until May 6, 1952, the effective date of the parking meter ordinance, and that consequently the termination notice given by the City on June 3, 1953, was within the period of thirty days immediately following the trial period of twelve months of actual operation, and hence was timely.

The parties have stipulated that the meters have been removed by the City and placed in storage. Since the City has terminated the lease in accordance with the provisions of the termination clause, it is under no further obligation to Duncan. The meters are the property of Duncan.

The City as an additional defense asserts that it is not liable because the contract contains a provision reading, "The sole obligation of the City hereunder to pay for the meters shall be from the receipts obtained from the operation thereof." Since we have heretofore found for the City on its principal defense, we deem it unnecessary to pass upon the additional defense urged.

The judgment is reversed and this case is remanded with directions to dismiss the action on its merits.